**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose CASTELLANOS, Defendant– Appellant.**

**No. 95–50004.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 15, 1995.

Decided April 10, 1996.

Yolanda Barrera, Los Angeles, California, for defendant-appellant Jose Castellanos.

Richard E. Drooyan, Assistant United States Attorney, Ellyn Marcus Lindsay, Assistant United States Attorney, Los Angeles, for plaintiff-appellee.

Before: HALL and JOHN T. NOONAN, Jr., Circuit Judges, and SHUBB,* District Judge.

## OPINION

SHUBB, District Judge:

Jose Castellanos appeals from his sentence on charges of mail fraud and making a false statement to a federally insured lending institution, upon the ground that his base offense level was improperly increased by two levels based on a finding of vulnerable victim under section 3A1.1 of the Sentencing Guidelines. Because the record does not support such a finding, we vacate the sentence and remand for resentencing.

## FACTS

In August 1987, Castellanos and two colleagues set up a business in the Los Angeles area entitled Fadel Group Investment Corporation ("FGIC"). Relying primarily upon extensive advertising in Spanish-language media, FGIC would solicit investments and then use the funds to purchase real estate. In these solicitations FGIC billed itself as a "proudly Hispanic company." Potential investors were told that FGIC was a prestigious, well-established company that purchased, renovated, rented and resold properties, and also acquired existing profitable companies. Investors were promised a 22 percent rate of return and were assured that the investments were risk-free because their money was secured by deeds of trust in the FGIC properties.

The truth of the matter was far different. FGIC had no source of income aside from the funds infused into the company by new investors. While FGIC did purchase real property, the parcels were so encumbered by debt that the properties and the attached deeds of trust were basically worthless. Further, Castellanos' two colleagues (but apparently not Castellanos himself) diverted large amounts of the company's assets to their personal use. In 1989, FGIC declared bankruptcy. Over one thousand individuals lost their investments, with total losses estimated at between ten and fifteen million dollars.

Castellanos pled guilty to three counts of an indictment charging violation of 18 U.S.C. § 1341 (mail fraud), and one count of an information charging violation of 18 U.S.C. § 1014 (false statement to federally insured lending institution). In calculating the sentence, the district court added two points to the base offense level pursuant to § 3A1.1 based on a finding that the victims were particularly susceptible to the scheme. He was sentenced to a term of 24 months on each count, to be served concurrently, followed by a three year term of supervised release, and a special penalty assessment of $200.[1]

## STANDARD OF REVIEW

In a challenge to a victim-related adjustment, this court reviews a district court's construction, interpretation, and application of the Sentencing Guidelines *de novo*. *United States v. O'Brien*, 50 F.3d 751, 754 (9th Cir.1995). Related factual findings are reviewed for clear error. *Id.*

## ANALYSIS

United States Sentencing Guidelines § 3A1.1 provides that:

> If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was

---

* Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation.

1. Pursuant to U.S.S.G. § 2F1.1(a), the district court found the base offense level to be six. In addition to the two point enhancement based upon the finding that the victims were particularly susceptible, eleven points were added pursuant to § 2F1.1(b)(*l*)(L) because the loss exceeded $10 million; two points were added pursuant to § 2F1.1(b)(2)(B) because the scheme defrauded more than one victim; and three points were added pursuant to § 3B1.1(b) for role in the offense. Two points were deducted pursuant to § 3E1.1 for acceptance of responsibility; and the court departed five levels downward pursuant to § 5K1.1 based upon Castellanos' cooperation with the government.

otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

Thus, section 3A1.1 will apply to increase the offense level where (1) a victim was either (a) unusually vulnerable due to age, physical or mental condition, or (b) otherwise particularly susceptible to the criminal conduct, and (2) the defendant knew or should have known of such vulnerability or susceptibility.

It is unclear precisely why the Commission chose to employ the separate concepts of "unusually vulnerable" and "particularly susceptible," except to suggest that characteristics of age, physical condition or mental condition may *per se* render a victim worthy of the special protection of this section, whereas other circumstances might make the victim subject to such protection depending upon the nature of the particular criminal conduct. *See United States v. Peters,* 962 F.2d 1410, 1416–17 (9th Cir.1992). Since neither age nor physical or mental condition of the victims formed the basis for the application of § 3A1.1 in this case, the appropriate inquiry "particularly susceptible" to defendant.

The Commentary to the section contains the following Application Note:

This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant. The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile.

U.S.S.G. § 3A1.1, Application Note 1.

The district court made no specific findings as to the susceptibility of any of the individual victims. It is clear, however, both from the Application Note and the case law that a victim-related adjustment may be supported by the more generalized finding that the members of a targeted group share a particular susceptibility. For example, in *O'Brien,* 50 F.3d at 756–57, individuals who developed medical problems and could not get their claims paid were found to be particularly susceptible to the defendants' fraudulent

health insurance scheme; and in *Peters,* 962 F.2d at 1415–18, persons with bad credit were found to be particularly susceptible to the defendants' fraudulent scheme of soliciting money for "pre-approved" credit cards. *See also United States v. Holmes,* 60 F.3d 1134, 1136–37 (4th Cir.1995) (persons with poor credit ratings who had been turned down elsewhere for loans were more susceptible to charlatan promising loans).

Here, the district court found that the victims were unusually susceptible to Castellanos' scheme by virtue of their being Spanish-speakers or Hispanic individuals. Specifically, citing to the facts that FGIC was touted as a "proudly Hispanic company," and that FGIC advertized exclusively in Spanish-language media, the district court found that Castellanos "targeted Spanish-speakers, many of whom may have placed trust in the defendant because he was one of their own."

There is no dispute but that many, if not all, of the victims in this case were Spanish-speaking or Hispanic individuals. The issue is whether these attributes made them particularly susceptible victims within the meaning of § 3A1.1.

■ It is possible that Spanish-speaking individuals are more likely to become victims of a fraud perpetrated by a Spanish-speaking defendant than would English-speaking persons. It is also possible that because of some cultural affinity Hispanics are more likely to become victims to a fraud perpetrated by an Hispanic defendant making an appeal to ethnic pride. It is unnecessary to address the validity of either of those premises, however, because it is not enough to support a finding of particular susceptibility under § 3A1.1 that the victims are more likely than other members of the general population to become a victim to the particular crime at issue. The reason for this is that criminals will always tend to target their victims with an eye toward success in the criminal endeavor. Thus, the chosen victims are usually more susceptible than the general population to the criminal conduct.

The appellate courts have consistently refused to find a class of victims to be particularly susceptible to criminal conduct simply

because they were statistically more likely to fall prey to the defendant's crime. In *United States v. Box*, 50 F.3d 345, 358–59 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 309, 133 L.Ed.2d 213 (1995), for example, the defendants, a bail bondsman and sheriff's officers, were convicted of extorting money from travelers arrested at a roadside park in exchange for promises that the charges, usually public lewdness or indecent exposure, would be dropped or reduced. The district court found that the victims, all white-collar professionals who were not local residents, were particularly susceptible to the scheme because of the fact that fighting stigmatizing morals charges away from home would have caused them emotional and financial problems. In setting aside the two point enhancement under § 3A1.1, the appellate court noted that although the victims, unsullied reputations and significant financial resources made the extortion possible, those characteristics did not make the victims particularly susceptible within the meaning of § 3A1.1. *Id.*, 50 F.3d at 359.

Similarly, in *United States v. Sutherland*, 955 F.2d 25, 26–27 (7th Cir.1992), the defendant was convicted of conspiring to commit mail fraud on war veterans and their families by posing as a military historian and author who needed to borrow veterans' memorabilia to write a book. The district court enhanced the sentence by two points under § 3A1.1, primarily because of the victims' age. In vacating the sentence, the appellate court held not only that there was insufficient evidence that the defendant targeted elderly victims, but that also the record did not support a conclusion that the victims were particularly vulnerable to fraudulent schemes such as the defendant's due to their nostalgia regarding their wartime experiences.

Likewise, in *United States v. Paige*, 923 F.2d 112, 113–14 (8th Cir.1991), the defendant was convicted of a fraudulent money order scheme in which he targeted young Caucasian clerks whom he considered inexperienced and naive. The district court adjusted the sentence upward two offense levels under § 3A1.1. The appellate court vacated the sentence, holding that the defendant's choice of victims did not show the

"extra measure of criminal depravity which section 3A1.1 intends to punish more severely." *Id. See also United States v. Morrill*, 984 F.2d 1136 (11th Cir.1993) (bank tellers as a group were held to be not particularly susceptible to bank robbery within the meaning of § 3A1.1).

Especially in cases involving some kind of scheme to defraud, the criminal will typically direct his activities toward those persons most likely to fall victim to the scheme. But all defendants targeting such victims do not necessarily merit a sentence enhancement under § 3A1.1. Otherwise, all but the most unthinking of criminal defendants would be candidates for upward adjustments under § 3A1.1. Instead, the victims to whom § 3A1.1 applies are those who are in need of greater societal protection. *United States v. Brunson*, 54 F.3d 673, 676 (10th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 397, 133 L.Ed.2d 317 (1995)(holding that a corporation engaged in an arms-length business transaction simply does not qualify as a vulnerable victim of fraud). They are the persons who, when targeted by a defendant, render the defendant's conduct more criminally depraved. *Paige*, 923 F.2d at 113.

This analysis is entirely consistent with previous Ninth Circuit cases upholding a § 3A1.1 increase for particular susceptibility. For example, in *Peters*, an increase was upheld where a fraudulent credit card scheme was targeted only to people from a mailing list who had credit problems. 962 F.2d at 1417. This court noted that "[t]he same kind of pitch made to the general public might have found these people in it" but would not have warranted the increase, because the general public is not particularly susceptible to this type of fraud. *Id.* at 1417 n. 5. Since the defendants knew the victims shared a common characteristic, a need for credit, the targeting of them by promising easy access to credit was more criminally depraved. Thus, the victims were susceptible to the defendants' scheme in a way that warranted § 3A1.1's added protection.

In *O'Brien*, the defendants were convicted of selling under-funded group health insurance to employers, and making fraudulent misrepresentations in the solicitation thereof. 50 F.3d at 753. At that point, there was no

particularly susceptible victim. Eventually, however, certain insureds covered by the plan developed medical conditions for which they needed treatment, and sought coverage by defendants. Those individuals were then particularly susceptible to the scheme, because they "felt compelled to continue paying their premiums in order to avoid losing coverage" that they needed. *Id.* at 757. It is understandable that victims in those circumstances are deserving of greater societal protection against such a crime. By knowingly continuing to accept premiums from those victims, the defendants reached a new level of depravity, one which warranted a § 3A1.1 increase. *Id.*

Nothing in the record supports a finding that the Spanish-speaking population of Southern California as a whole shares some unique susceptibility to fraud that warrants the law's protection, or that makes Castellanos' crime especially reprehensible. Nor is there any showing that the entire Hispanic population of Southern California shares any such susceptibility.

This is not to say that § 3A1.1 would never apply against a defendant accused of running an "affinity scam" by which a minority business owner victimizes people in his own community who are more likely to trust members of their own ethnic group. Evidence that an ethnic group was particularly susceptible to the fraud due to lack of education, extreme insularity, superstition, or lack of familiarity with United States business practices or law enforcement might suffice to support use of § 3A1.1 against a defendant accused of swindling members of such a group. *Cf. United States v. Bengali,* 11 F.3d 1207, 1212 (4th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1853, 128 L.Ed.2d 477 (1994)(holding that a Bulgarian immigrant was particularly susceptible to an extortion scheme because he lacked knowledge about American law and business practices). No such showing was made in this case, however.

The sentence is therefore VACATED, and the case is REMANDED to the district court for resentencing consistent with this Opinion.