107 F.3d 18
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mary Y. OMORI, Defendant-Appellant.
 No. 95-10431.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1996.
Decided Dec. 12, 1996.
 
 1
 Before: O'SCANNLAIN and LEAVY, Circuit Judges, and HUFF,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Mary Yoko Omori ("Omori") appeals her sentence following her guilty plea to bank fraud, bank embezzlement, filing a false currency transaction report, and structuring financial transactions to evade reporting requirements.
 
 
 4
 Omori is a 68-year-old U.S. citizen, born in Hawaii to Japanese parents. Omori was employed as an assistant manager, and later an assistant vice-president of a bank in Waikiki.
 
 
 5
 In 1979, at age 51, Omori developed a scheme to embezzle money through the use of fraudulent certificates of deposits ("CD's"). Omori, who is fluent in Japanese, targeted Japanese citizens who visited Hawaii. She offered the Japanese customers higher than market interest rates on their CD's, took their money, then "voided" the original CD. Thus, the bank was unaware that the transaction had occurred. Omori placed the money in several different accounts under the names of real Japanese customers, but she had these accounts coded with her home address so that account statements would be sent to her rather than to the customers.
 
 
 6
 Omori's scheme went undetected for more than 15 years. She took in over 3.2 million dollars from 24 Japanese bank customers, paid back about $865,000 to the customers who periodically cashed in their CD's, thus netting for herself over 2.3 million dollars.
 
 
 7
 After Omori was transferred to another branch in 1994, the bank discovered the discrepancies in the records, and Omori's entire scheme was exposed. She pled guilty pursuant to a plea agreement and was sentenced to 63 months incarceration.
 
 
 8
 The district court enhanced Omori's sentence for "vulnerable victims" pursuant to U.S.S.G. § 3A1.1.[1] The district court found that the bank customers were Japanese citizens who had restricted and infrequent contact with the bank, English was not their native language, and they did not have a uniform understanding of what normal customs in a bank would be.
 
 
 9
 Omori first argues that because her convictions were for violation of federal banking laws, the "victim" was the bank, not the individual bank customers. The bank, through its federal insurer, made settlements with the customers, therefore the customers suffered no monetary harm.
 
 
 10
 We reject Omori's argument because the "vulnerable victim" provision does not require that the "victim" be a victim of the offense of conviction. See United States v. Haggard, 41 F.3d 1320, 1326 (9th Cir.1994). While it is correct that the bank deposits are actually owned by the bank, which is an obligor to its depositors, see, e.g., 12 U.S.C. § 1813(l)(1), Omori deceived certain customers to appropriate their deposits for herself. Although these customers were ultimately reimbursed by the bank, they were nevertheless integral and unwitting victims of Omori's scheme. Accord, United States v. Lee, 973 F.2d 832, 834 (10th Cir.1992) (bank customers whose accounts were embezzled by a bank employee were "victims" for purposes of U.S.S.G. § 3A1.1); United States v. Yount, 960 F.2d 955, 958 (11th Cir.1992) (bank account holders were victims of embezzlement even though they suffered no monetary harm).
 
 
 11
 Omori next argues (1) that the district court's findings regarding "vulnerable" victims create a group stereotype of "unsophisticated and gullible foreigners" which is clearly erroneous; (2) that vulnerable victim status must be based upon an individual assessment of each investor, rather than a "stereotypical assumption" of group characteristics; and (3) that these investors are not "unusually" or "particularly" susceptible, as required by the guideline.
 
 
 12
 Omori cites this court's recent decision in United States v. Castellanos, 81 F.3d 108 (9th Cir.1996) to support her argument. In Castellanos, the defendant formed a company which billed itself as a "proudly Hispanic company," and targeted Spanish-speaking customers for investments, which turned out to be fraudulent. The district court made no specific findings as to the susceptibility of any of the individual victims, but enhanced the sentence because the defendant "targeted Spanish-speakers, many of whom may have placed trust in the defendant because he was one of their own." 81 F.3d at 110. We vacated the enhancement, stating:
 
 
 13
 Nothing in the record supports a finding that the Spanish-speaking population of Southern California as a whole shares some unique susceptibility to fraud that warrants the law's protection, or that makes Castellanos' crime especially reprehensible. Nor is there any showing that the entire Hispanic population of Southern California shares any such susceptibility.
 
 
 14
 This is not to say that § 3A1.1 would never apply against a defendant accused of running an "affinity scam" by which a minority business owner victimizes people in his own community who are more likely to trust members of their own ethnic group. Evidence that an ethnic group was particularly susceptible to the fraud due to lack of education, extreme insularity, superstition, or lack of familiarity with United States business practices or law enforcement might suffice to support use of § 3A1.1 against a defendant accused of swindling members of such a group.
 
 
 15
 81 F.3d at 112.
 
 
 16
 We reject Omori's arguments. First, the factual findings of the district court demonstrated that Omori, by deceiving only Japanese customers, was conducting a variation of an "affinity scam." But the critical factor to her success, as noted by the district court, was that the Japanese customers were only visitors, and not residents of Hawaii, with "many less direct opportunities to go to the bank, to deal with other people at the bank, and to have the irregularities in their banking transactions discovered" (quoting the district court). Compare United States v. Thomas, 62 F.3d 1332, 1345 (11th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1058 (1996) (one of the victims of loan fraud was more vulnerable because while the victim was out of the country, he lacked the ability to monitor defendants' activities).
 
 
 17
 Second, the district court's factual findings are supported by the record and do not necessarily create a group stereotype. A district court can consider the susceptibility of a group of victims as a whole. See U.S.S.G. § 3A1.1 comment (n. 2)[2]; United States v. O'Brien, 50 F.3d 751, 757 (9th Cir.1994) ("victims who developed medical conditions and could not get their claims paid are, as a group, unusually vulnerable"); United States v. Peters, 962 F.2d 1410, 1412 (9th Cir.1992) (all 30,000 victims listed on a mailing list of credit problem names were deemed vulnerable victims). The district court analyzed the range of individual differences among the Japanese bank customers regarding their language skills, frequency of visits, and business sophistication. Furthermore, there is no requirement that each victim be equally vulnerable. Compare United States v. Astorri, 923 F.2d 1052, 1055 (3rd Cir.1991) (sentence of stockbroker who defrauded 12 persons could be enhanced because the victims included stockbroker's girlfriend's parents, who were "particularly susceptible" to his scheme).
 
 
 18
 Finally, the district court's factual findings regarding the victims' language skills, frequency of visits, and business sophistication are not clearly erroneous. The district court's interpretation and application of the guideline is not contrary to law. Therefore, the two-level enhancement for vulnerable victims was proper.
 
 
 19
 Omori also argues that the district court erred in calculating the loss figure under U.S.S.G. § 2F1.1. There is no dispute that Omori embezzled a total of $3,236,475.46. During the course of committing her crime, Omori paid back to the customers $865,192.13. Omori argues that the "actual" loss figure of $2,371,283.33 should have been used.
 
 
 20
 We are instructed by Application note 7 to U.S.S.G. § 2F1.1, which states in part, "[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." We have held that in calculating loss in fraud cases, the sentencing court should take a realistic, economic approach to determine what losses the defendant truly caused or intended to cause. United States v. Allison, 86 F.3d 940, 943 (9th Cir.1996); United States v. Harper, 32 F.3d 1387, 1392 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1162 (1995).
 
 
 21
 The district court found that Omori intended to inflict the $3.2 million loss. Omori did not object to this finding below. The district court's finding does not constitute plain error. See United Stated v. Olano, 507 U.S. 725, ----, 113 S.Ct. 1770, 1779 (1993).
 
 
 22
 Omori, unlike the defendants in Allison and Harper, was charged and sentenced for embezzlement as well as fraud. Omori repaid some of the money to the bank customers simply to keep her embezzlement scheme alive. Therefore, it was appropriate for the district court to use an intended loss approach.
 
 
 23
 Omori finally argues that the district court erred in its interpretation of the sentencing guidelines in ruling on Omori's motion for downward departure. Specifically, Omori argues that the district court misunderstood the guidelines because it considered Omori's age and health separately rather than "in tandem" pursuant to the phrase "elderly and infirm" in U.S.S.G. § 5H1.1.[3]
 
 
 24
 A district court's discretionary decision not to depart is not reviewable on appeal unless the decision resulted from a legal determination that the guidelines prevented departure. United States v. Brown, 985 F.2d 478, 480 (9th Cir.1993).
 
 
 25
 The district court's lengthy discussion of Omori's age and incarceration alternatives indicates that the court carefully considered the relevant factors both separately and in combination, and clearly understood its authority to depart downward. Its decision not to depart downward is unreviewable by this court. See United States v. Brown, 985 F.2d at 480; United States v. Morales, 898 F.2d 99, 103 (9th Cir.1990).
 
 
 26
 The sentence imposed by the district court is AFFIRMED.
 
 O'SCANNLAIN, Circuit Judge, dissenting:
 
 27
 I respectfully dissent. I am not persuaded that the enhancement under U.S.S.G. § 3A1.1 for "vulnerable victims" applies on these facts. I would reverse the district court and remand the case for resentencing.
 
 
 28
 The court correctly points out that in United States v. Castellanos, 81 F.3d 108, 111-12 (9th Cir.1996) we held that "a victim-related adjustment may be supported by the more generalized finding that the members of a targeted group share a particular susceptibility." Id. at 110 (emphasis added). Accordingly, the court properly rejects Omori's argument that the district court in this case erred by basing an enhancement on characteristics common to the customers as a whole, rather than by making an individualized determination for each one.
 
 
 29
 However, Castellanos supports Omori's argument that the district court erred in concluding that the customers in this case were "particularly susceptible" to her scheme simply because (1) they were Japanese citizens and (2) they did not speak English as their native tongue. As explained in Castellanos, in cases involving schemes to defraud
 
 
 30
 the criminal will typically direct his activities toward those persons most likely to fall victim to the scheme. But all defendants targeting such victims do not necessarily merit a sentence enhancement under § 3A1.1. Otherwise, all but the most unthinking of criminal defendants would be candidates for upward adjustments under § 3A1.1 Instead, the victims to whom § 3A1.1 applies are those who are in need of greater societal protection.... They are the persons who, when targeted by a defendant, render the defendant's conduct more criminally depraved.
 
 
 31
 Id. at 111 (emphasis added).
 
 
 32
 Indeed, it is not even clear that the customers were "victims." They were all made whole by the Bank; more than likely the Bank itself (or its insurer) was, in the end, the sole victim. In any event, assuming the customers were targeted as victims, the mere fact that they were Japanese and did not speak English qualified them as "persons most likely to fall victim to [Omori's] scheme;" however, the fact that they were Japanese and did not speak English does not "render [Omori's] conduct more criminally depraved." Id. To the contrary, as was the case in Castellanos, there is no evidence in the record here that the customers (as a group or individually) were "particularly susceptible to fraud due to lack of education, extreme insularity, superstition, or lack of familiarity with United States business practices or law enforcement...." Id. at 112. Absent some evidence that, for example, they were in fact so unfamiliar with American business practices that they were actually incapable of monitoring their investments, or, for example, that their inability to speak English actually rendered them dependent upon Omori's investment advice, I would not apply U.S.S.G. § 3A1.1. It is entirely possible that the customers in this case were sophisticated investors who regularly invested in the United States money market and simply decided to deal with Omori because she offered a higher interest rate. Moreover, the "victims" were dealing with the bank in an arm's length situation.[1] Accordingly, the district court's conclusion that the customers were "particularly susceptible" to Omori's scheme simply because they were Japanese visitors is not a supportable conclusion in my view.
 
 
 
 *
 The Honorable Marilyn L. Huff, United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 1 U.S.S.G. § 3A1.1 (re-numbered as 3A1.1(b) effective Nov. 1, 1995):
 If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.
 2 U.S.S.G. 3A1.1 commentary (n. 2) (effective Nov. 1, 1995):
 Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.
 3 U.S.S.G. § 5H1.1 provides in part:
 Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.
 
 
 [1]
 Cf. United States v. Brunson, 54 F.3d 673, 676 (10th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 397 (1995) (holding that a business engaged in an arms-length transaction does not qualify as a vulnerable victim of fraud)