UNITED STATES of America, Plaintiff–Appellee,

v.

Jeffrey D. RANDALL, Defendant–Appellant.

No. 97–10108.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1998.

Decided Dec. 11, 1998.

558

Michael B. Bigelow, Sacramento, California, for the appellant.

Richard Pachter, Special Assistant United States Attorney, Sacramento, California, for the appellee.

Before: HUG, Chief Judge, FLETCHER and TROTT, Circuit Judges.

HUG, Chief Judge:

Appellant Jeffrey Randall ("Randall") appeals his conviction and sentence for nine counts of mail fraud, nine counts of wire fraud, and one count of conspiracy to commit mail fraud and wire fraud arising from a telemarketing scheme. Randall challenges his conviction based on the argument that the district court should have granted a mistrial because there was government misconduct during the summation. Randall challenges his sentence on two grounds. First, he argues that the district court should not have applied a two level "vulnerable victim" enhancement under the Sentencing Guidelines. Second, he argues that the district court erred in sentencing him to the middle of the guideline range, because the court did not specify the reasons for doing so. We have jurisdiction under 28 U.S.C. § 1291 and we affirm the conviction and sentence.

## I.

Randall's conviction stems from his participation in a telemarketing scheme whereby "fronters," working for a company called Marketing Unlimited, "cold called" people from customer lists, which typically consisted of names of people who had filled out contest or sweepstake entry forms at shopping centers. The "fronters" induced these people to purchase pens and other products with promises of significant awards that greatly exceeded in value the purchase price of the products. In exchange for the money, the customer was sent a product and an award. The company spent between ten and twelve percent of the money that customers sent in on the products and awards. The record indicates that no customer ever received more in value than they sent to Marketing Unlimited. At some point after a customer sent in money, a "reloader" received a copy of the initial sales order form (also called "reload paper"), and called the customer again to attempt to "reload" the customer into making another order. This scheme resulted in the collection of approximately $1.3 million by Marketing Unlimited in less than one year.

On December 3, 1997, Randall was convicted for his role as a "reloader" in this tele-marketing scheme and was sentenced to forty one months in prison. He then filed a timely appeal.

## II.

Randall's challenge to his conviction is based on the district court's refusal to grant a mistrial after the prosecution's closing argument. He argues that the prosecution acted inappropriately by stating that Randall's former employer, Tri Star Inc., was closed down by the FBI. Specifically, the prosecutor said:

> I want to talk to you about verification and customer sales.... Folks, it's part of the scheme. It's part of the scheme. TriStar, you learned, had a verification and customer service department. In fact, Mr. Miller and Mr. LeBlanc came to Marketing Unlimited from TriStar. *And that was shut down. It was investigated by the FBI Agent Hummel.* ... You had the same verification and customer service department and the same people at TriStar which was *shut down by the FBI*, and they knew it.

Randall moved for a mistrial the next morning, but the motion was denied. However, the district court did issue a curative instruction which stated that there was no evidence that TriStar was closed by the FBI, and no evidence from which this could be inferred. The district court further stated that TriStar was not, in fact, closed by the FBI.

We review the district court's denial of a motion for mistrial for an abuse of discretion. *See United States v. English,* 92 F.3d 909, 912 (9th Cir.1996). Ordinarily, cautionary instructions or other prompt and effective actions by the trial court are sufficient to cure the effects of improper comments, because juries are presumed to follow such cautionary instructions. *Id.* Moreover, " '[d]eclaring a mistrial is appropriate only where a cautionary instruction is unlikely to cure the prejudicial effect of an error.' " *United States v. Valdez–Soto,* 31 F.3d 1467, 1473 (9th Cir.1994) (quoting *United States v. Charmley,* 764 F.2d 675, 677 (9th Cir.1985)).

We conclude that the district court's cautionary instruction cured any prejudice re-

sulting from the prosecutor's statements. The district court issued this instruction promptly, the day after the statements were made. Therefore, the district court did not abuse its discretion in denying the motion for mistrial.

### III.

■■■ Randall also challenges the district court's two-level "vulnerable victim" sentence enhancement under section 3A1.1(b) of the United States Sentencing Guidelines.[1] We review a district court's construction, interpretation, and application of the Sentencing Guidelines de novo. *See United States v. Castellanos*, 81 F.3d 108, 109 (9th Cir.1996). Factual findings, such as findings that the victims were vulnerable, are reviewed for clear error. *See United States v. Caterino*, 957 F.2d 681, 683 (9th Cir.1992). We have explained the application of the relevant section of the Sentencing Guidelines as follows: "[S]ection 3A1.1 will apply to increase the offense level where (1) a victim was either (a) unusually vulnerable due to age, physical or mental condition, or (b) otherwise particularly susceptible to the criminal conduct, and (2) the defendant knew or should have known of such vulnerability or susceptibility." *Castellanos*, 81 F.3d at 110. The district court found that Randall was subject to this enhancement because the victims of the "reloading" scheme were "particularly susceptible," and that Randall knew or should have known of this susceptibility.

■■■ The Seventh Circuit in *United States v. Jackson*, 95 F.3d 500, 506–08 (7th Cir.1996), analyzed the same type of "reloading" scheme found here, and affirmed the district court's finding that the "reloading"

exemplified the targeting of unusually vulnerable victims.[2] While recognizing that a person involved in a scheme to defraud will usually direct his activities toward those persons most likely to fall victim to the scheme and that not all such defendants will deserve the vulnerable victim sentence enhancement, *see Castellanos*, 81 F.3d at 110–11, we agree with the Seventh Circuit's conclusion in *Jackson*. The enhancement is appropriate when a defendant's activities are directed towards those in need of greater societal protection, thus rendering the defendant's conduct more criminally depraved. *See Castellanos*, 81 F.3d at 111. The "reloading" scheme at issue here seeks out people who have a track record of falling for fraudulent schemes. As the Seventh Circuit stated, "[w]hether these persons are described as gullible, overly trusting, or just naive ... their readiness to fall for the telemarketing rip-off, not once but *twice* ... demonstrated that their personalities made them vulnerable in a way and to a degree not typical of the general population." *Jackson*, 95 F.3d at 508 (emphasis in original).[3]

Because the victims of this scheme were particularly susceptible, and it is uncontested that Randall knew or should have known that the persons "reloaded" had previously fallen for the scheme, we find that the district court did not clearly err in applying the vulnerable victim enhancement in this case.

### IV.

■■■ Randall's final argument is that, other than overruling his objection to the vulnerable victim enhancement, the district court failed to specifically state its reasons for imposing this sentence. Therefore, he

---

**1.** This section provides that: "If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels." U.S.S.G. § 3A1.1(b) (1997).

**2.** Unlike several other circuits, including the Seventh Circuit, *see Jackson*, 95 F.3d at 507, the Ninth Circuit does not read § 3A1.1(b) to require the defendant to "target" an unusually vulnerable victim before it may be applied. All that is required is that the defendant "knew or should

have known" that the victim was unusually vulnerable. *United States v. O'Brien*, 50 F.3d 751, 755 & n. 3 (9th Cir.1995).

**3.** Randall argues that countless legitimate vendors maintain lists of previous purchasers, and that the mere willingness to make repeat purchases does not make a consumer a "vulnerable victim." The difference between repeat purchasers in general and the "reloaded" victims here, however, is the latter's vulnerability to *fraudulent* sales schemes. This is what makes them "victims," rather than mere consumers.

requests that the matter be remanded for a particularized finding of the scope of the agreement to participate in the fraudulent scheme and for resentencing.

In sentencing Randall, the district court adopted the recommendations contained in the Presentence Report ("PSR") and determined his applicable offense level under the Guidelines to be twenty one. The district court then sentenced Randall to forty one months, a sentence within the range set by the Guidelines. Randall was asked at the sentencing hearing if he had read the PSR and discussed it fully with counsel. He responded affirmatively, and failed to raise objections to anything contained in the PSR beyond the vulnerable victim enhancement.

■ Alleged sentencing errors are reviewed for plain error where the defendant has failed to object before the district court and therefore forfeited his right to appeal. *See United States v. Hernandez–Rodriguez,* 975 F.2d 622, 628 (9th Cir.1992); *United States v. Visman,* 919 F.2d 1390, 1393–94 (9th Cir.1990). Randall was convicted of conspiracy for his role at Marketing Unlimited, which took in almost $1.3 million in less than one year. Furthermore, Randall was a "reloader," who knew or should have known that the people he was calling had previously fallen for the scheme. In addition, there was trial testimony that all of the salespeople at Marketing Unlimited made misrepresentations and knew the pitch was illegitimate. Randall failed to produce evidence which places any of these issues in controversy. Therefore, we cannot conclude that there was (1) error, (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Olano,* 507 U.S. 725, 732–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

For the forgoing reasons, the conviction and sentence are AFFIRMED.