**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jorge CHUA, Defendant–Appellant.**

**No. 00–10102.**
**D.C. No. CR–99–00168–GEB.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 2001.

Decided Aug. 6, 2001.

Before SCHROEDER, Chief Judge,
LAY * and BOOCHEVER, Circuit Judges.

MEMORANDUM **

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

This appeal arises from Jorge Chua's conviction for mail fraud under 18 U.S.C. § 1341. Chua argues that there was insufficient evidence for the jury to convict him and that the district court improperly enhanced his sentence for obstruction of justice. We affirm.

## I.

In 1995, Chua opened a recycling center called 168 America Recycling Company in Carson, California. The California Department of Conservation ("DOC") later learned that Chua was participating in an illegal scheme to defraud the California Beverage Container Recycling Fund ("the Fund"). Investigators from the DOC and the Los Angeles District Attorney's office began surveilling Chua and in August 1997, obtained and executed search warrants for his home and business. During the search, officers found shredded documents in the waste basket in Chua's office. The shredder was covered by a newspaper and a child's painting.

Investigators reconstructed two types of documents from the waste basket. First, it contained "top sheets" of recent customer receipts which should have been provided to the customers. Investigators concluded that the top sheets were consistent with the creation of fraudulent receipts. The second type of reconstructed document was scrap paper with handwritten notations related to recycling. Investigators determined that these papers also were indicative of a fraudulent scheme.

On May 13, 1999, Chua was indicted on eight counts of mail fraud in violation of 18 U.S.C. § 1341.[1] The indictment alleged that Chua devised a scheme to defraud the Fund by purchasing out-of-state beverage containers and redeeming them for California Redemption Value ("CRV").[2] Counts One through Four of the indictment were based on mailings from various recycling processors through two commercial carrier companies, Federal Express and DHL Worldwide Express ("DHL"). Each mailing allegedly included documents which had been submitted by Chua, the recycler, to the recycling processors. The mail fraud statute was triggered when the processors mailed the fraudulent documents to the Fund with their claims for reimbursement. Counts Five through Eight charged Chua with causing the CRV reimbursement checks to be mailed from the Fund to the recycling processors.[3]

The case was tried to a jury, which returned a guilty verdict on all counts. The court found that substantial evidence in the record justified a two-level sentence increase for obstruction of justice based on Chua's perjured testimony in the DOC's investigation and the shredded documents found in the search.

## II.

### A. Sufficiency of the Evidence

Mail fraud under 18 U.S.C. § 1341 involves: (1) existence of a scheme to de-

---

**1.** Chua was indicted along with two co-defendants who are not parties to this appeal.

**2.** CRV is a redeemable deposit, typically 2.5 cents per can or bottle, which customers pay as part of the purchase price for bottled or canned beverages. Customers are repaid CRV when they bring containers to a state certified recycling center. The recycling center then sells the containers to a "processor," who pays the recycling center the CRV and a scrap value. These transactions between re-

cyclers and processors are recorded in a document called a "DR–6." The processor then may seek payment of the CRV from the Fund by filing a form called a "DR–7," which includes as attachments all of the underlying DR–6 forms submitted by the recycling centers for the relevant period. Based on this paperwork, the Fund issues checks to the processors.

**3.** The parties stipulated that these checks were mailed.

fraud; and (2) using or causing the use of the mails in furtherance of the scheme. *See United States v. Stein,* 37 F.3d 1407, 1408–09 (9th Cir.1994). Chua argues that there was insufficient evidence to prove that the mailings in the first four counts of the indictment were transmitted through a "private or commercial interstate carrier" as required by the mail fraud statute. *See* 18 U.S.C. § 1341. Chua also argues that there was no evidence of any mailing by or caused by him "for the purpose of executing" the alleged fraudulent scheme. *See id.*

In reviewing the sufficiency of the evidence to support a conviction, this court considers the evidence in the light most favorable to the prosecution and then determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Aichele,* 941 F.2d 761, 763 (9th Cir.1991). "The standard of review employed in sufficiency of the evidence cases is highly deferential." *United States v. Rubio–Villareal,* 967 F.2d 294, 296 (9th Cir.1992) (en banc).

### 1. Interstate Carriers

■ The Government introduced witness testimony and documents to show that Federal Express and DHL are interstate carriers. First, a witness from Data Imaging Systems Corporation, the Fund's intermediary that receives and processes CRV claims, explained how the Fund receives CRV paperwork through the mail or by commercial carriers such as Federal Express, UPS, Airborne Express, and DHL. When asked if DHL was an interstate carrier like Federal Express, the witness replied "I assume so." The Government also introduced the actual Federal Express and DHL airbills underlying Counts One through Four. The top of the Federal Express airbill was labeled "USA Airbill." The DHL airbill included "Worldwide Express" and "Shipment Air-

waybill" captions, with options for "U.S. Domestic," "International," and "World-mail" service.

When viewed in the light most favorable to the verdict, this evidence is sufficient for a rational jury to find that Federal Express and DHL are interstate carriers. The captions and labels on the airbills referencing national and worldwide service are strong indicators of these carriers' interstate capacity. Witness testimony also provided circumstantial evidence that the couriers deliver packages on an interstate basis. Even though the mailings at issue were delivered within California, the evidence introduced by the Government at trial certainly allowed for the jury to conclude that Federal Express and DHL are interstate carriers.

### 2. Mailings Sufficiently Closely Related to the Scheme

■ Section 1341 covers "those limited instances in which the use of the mails is a part of the execution of the fraud." *Kann v. United States,* 323 U.S. 88, 95, 65 S.Ct. 148, 89 L.Ed. 88 (1944). However, the mailing need only be "sufficiently closely related to the scheme" to constitute mail fraud. *United States v. Hubbard,* 96 F.3d 1223, 1228 (9th Cir.1996). The relationship between the mailing and the fraudulent scheme is close enough if the defendant knows "that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Pereira v. United States,* 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954). In other words, mailings that are "incident to an essential part of the scheme" or "a step in [the] plot" fall under the mail fraud statute. *Schmuck v. United States,* 489 U.S. 705, 710–11, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (citations omitted).

The most instructive authority on the issue before us is the Supreme Court's

decision in *Schmuck*, which made the "critical distinction" between mailings that are for the purpose of, or incidental to, the mail fraud scheme, and mailings that occur after the scheme has reached fruition. *See id.* at 712, 109 S.Ct. 1443. *Schmuck* involved a used car distributor who rolled back odometers and sold the cars to unwitting dealers at prices artificially inflated by the low mileage readings. The dealers then sold the cars to retail customers, consummating the transactions by mailing title application forms to the state on behalf of the buyers. The Court found "that a rational jury could have found that the title-registration mailings were part of the execution of the fraudulent scheme ... which did not reach fruition until the retail dealers resold the cars" and transferred title to the buyer. *Id.* Even though the title registration mailings were tangential to Schmuck's duping of the retail dealers and their customers, "they were necessary to the passage of title, which in turn was essential to the perpetuation of Schmuck's scheme." *Id.* In other words, the success of Schmuck's scheme depended on a specific and interrelated chain of events which could not have reached fruition without the mailings.[4]

■ A rational jury could have concluded that Chua's harmonious relationships with the recycling processors was critical to the success of his scheme. If the processors could not get CRV reimbursement with documents obtained from Chua, they likely would not do business with him. The world of recycling processors in California who participate in CRV transactions presumably is not so vast that Chua could perpetrate his scheme through an endless supply of unwitting participants. Accordingly, Chua's scheme reached fruition when the Fund mailed CRV reimbursement checks to the recycling processors. These mailings meet the mailing element for mail fraud under § 1341.

## B. Sentence Enhancement

This court reviews the district court's interpretation of the United States Sentencing Guidelines *de novo*. *See United States v. Castellanos*, 81 F.3d 108, 109 (9th Cir.1996). The Court "will uphold the district court's factual findings used to support a sentencing enhancement absent clear error." *United States v. Mattarolo*, 209 F.3d 1153, 1159 (9th Cir.2000).

■ The United States Sentencing Guidelines provide for a two-level increase in the offense level for willful obstruction of or attempt to obstruct justice "during the course of the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. The obstruction must relate to either "(i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." *Id.* The commentary to § 3C1.1 lists, as examples of obstruction of justice, perjury and shredding documents with knowledge of an ongoing investigation. *See* U.S.S.G. § 3C1.1 app. 4(b) and (d).

The district court found that Chua obstructed justice on two independent grounds: (1) he committed perjury in a civil deposition during the course of a state administrative investigation into the same

---

4. This is distinct from a situation where the mailing is inconsequential to the success of the scheme. *See United States v. Maze,* 414 U.S. 395, 402, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) (finding "no indication that the success of [respondent's] scheme depended in any way on which of his victims ultimately bore the loss" through the mailings); *Parr v. United States,* 363 U.S. 370, 393, 80 S.Ct. 1171, 4

L.Ed.2d 1277 (1960) (finding that because the scheme reached fruition when defendants received the goods and services they purchased with a stolen credit card, the mailings through which the bank collected payment were not sufficiently related to the execution of defendants' scheme to trigger mail fraud statute); *Kann,* 323 U.S. at 94, 65 S.Ct. 148.

fraud as the federal investigation; and (2) he destroyed inculpatory documents with knowledge of an ongoing investigation by authorities. Chua contests both grounds of the enhancement.

Perjury is committed when a "witness testifying under oath or affirmation ... gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Dunnigan v. United States*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). An application of a sentence enhancement based on perjury will be upheld where the court's findings encompass all of the factual predicates for a finding of perjury. *See id.* at 95, 113 S.Ct. 1111.

After presiding at trial and entertaining oral argument on the obstruction issue, the district court adopted the findings in the Pre–Sentence Report ("PSR"), which concluded that Chua provided false testimony and inaccuracies during his deposition that could not be attributed to faulty memory. These findings were clearly supported by the record. *See United States v. Monzon–Valenzuela*, 186 F.3d 1181, 1184 (9th Cir. 1999) (holding that a court may make perfunctory findings so long as they are "clearly supported by the record"). In adopting the PSR, we find that the court made the requisite findings of the elements of perjury.[5] The enhancement applied by the district court is affirmed.[6]

AFFIRMED.

---

**5.** Chua's perjury in the state proceedings related to the federal offense of conviction such that the court's application of § 3C1.1 was appropriate. *See United States v. Luca*, 183 F.3d 1018, 1022 (9th Cir.1999) ("For purposes of applying the obstruction enhancement, we can find no convincing reason to distinguish between state and federal law enforcement officers who are investigating the same offense.").

**6.** Because we affirm the enhancement based on perjury, we need not address the independent grounds of the shredded documents.