Opinion by Judge TASHIMA; Dissent by Judge CALLAHAN.
OPINION
TASHIMA, Circuit Judge:
William Nielsen appeals the sentence imposed following his guilty plea to coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). Nielsen contends that the district court erred when it calculated the Sentencing Guidelines range for his offense. Specifically, Nielsen contends that the district court erred in imposing a two-level upward adjustment pursuant to the “vulnerable victim” provision of U.S.S.G. § 3A1.1. He also contends that the district court should not have applied a “repeat and dangerous sex offender” enhancement pursuant to U.S.S.G. § 4B 1.5(a), on the basis of his adjudication as a delinquent youth. We have jurisdiction pursuant to 28 U.S.C. § 1291. We vacate Nielsen’s sentence and remand for resentencing.
I. BACKGROUND
A. Factual Background
In December 2010, Nielsen began communicating with A.J., a 12-year-old girl,[1] on an adults-only sex chat line. The two exchanged phone numbers and engaged in phone sex and “sexting.” Nielsen told A.J. that he could provide her with drugs and invited her to visit him in Montana. A.J. purchased a Greyhound bus ticket to visit Nielsen, using money she took from her parents. Before she left Wyoming, she informed Nielsen of her age. He told her that he was already a registered sex offender.
*1034 When A.J. arrived by bus in Montana, Nielsen met her at the station and brought her back to his apartment, where he gave her marijuana. Over the next four days, he had sex with A.J. numerous times, engaging her in bondage and sadomasochistic activity. While she was at Nielsen’s apartment, A.J. had full use of her phone, which she used to send text messages to her friends and to Nielsen while he was out of the apartment. After four days, A.J.’s parents, who were divorced, tracked her to Nielsen’s apartment and retrieved her.
Before meeting Nielsen, A.J. had used drugs and engaged in sexual conduct with older men. She described herself to police as mature for her age. In order to access the adults-only chat line where she met Nielsen, A.J. misrepresented her age.
B. Procedural Background
In January 2011, Nielsen pled guilty to coercion and enticement of a minor, a violation of 18 U.S.C. § 2422(b). The district court applied a two-level upward adjustment to Nielsen’s offense level pursuant to U.S.S.G. § 3A1.1, based on its conclusion that Nielsen knew or should have known that A. J. was unusually vulnerable as compared to other minors. The court also applied a “repeat and dangerous sex offender” enhancement, based on its conclusion that Nielsen’s juvenile adjudication for sexual assault qualified as a prior “sex offense conviction” within the meaning of U.S.S.G. § 4B1.5(a).
Nielsen objected to the applications of § 3A1.1 and § 4B1.5(a); the district court overruled both objections. Based on the district court’s calculations, the Guidelines range for Nielsen’s offense was 235 to 293 months in prison. The court sentenced Nielsen to an above-Guidelines sentence of 480 months, as requested by the government. Nielsen contends that the length of his sentence is substantively unreasonable.
II. STANDARD OF REVIEW
We review the district court’s construction and interpretation of the Sentencing Guidelines de novo. United States v. Holt, 510 F.3d 1007, 1010 (9th Cir.2007); United States v. Allen, 153 F.3d 1037, 1040 (9th Cir.1998). We review the court’s factual findings for clear error. Holt, 510 F.3d at 1010.
III. DISCUSSION
A. Vulnerable Victim Adjustment
The Sentencing Guidelines provide for a two-level upward adjustment to a defendant’s offense level “[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim....” U.S.S.G. § 3Al.l(b). A “vulnerable victim” is a person who is “unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.” U.S.S.G. § 3A1.1 cmt. n.2.
A victim is “unusually vulnerable” when she is “less able to resist than the typical victim of the offense of conviction.” United States v. Wetchie, 207 F.3d 632, 634 (9th Cir.2000); see also United States v. Luca, 183 F.3d 1018, 1027 (9th Cir.1999) (stating that the district court must point to facts that made the victim “less able to defend [herself] than a typical victim”).[2] “[I]t is not enough to support a finding of particular susceptibility under *1035 § 3A1.1 that the victim[ ] [is] more likely than other members of the general population to become a victim to the particular crime at issue.” United States v. Castellanos, 81 F.3d 108, 110 (9th Cir.1996). As we explained in Castellanos:
The reason for this is that criminals will always tend to target their victims with an eye toward success in the criminal endeavor. Thus, the chosen victims are usually more susceptible than the general population to the criminal conduct. ... But all defendants targeting such victims do not necessarily merit a sentence enhancement under § 3A1.1. Otherwise, all but the most unthinking of criminal defendants would be candidates for upward adjustments under § 3A1.1.
Id. at 110-11.
Therefore, “[i]f the factor that makes the victim vulnerable is not ‘unusual’ for victims of the offense, the § 3Al.l(b) enhancement is not permitted.” United States v. Castaneda, 239 F.3d 978, 981 (9th Cir.2001); see also United States v. Williams, 291 F.3d 1180, 1195-96 (9th Cir.2002), overruled on other grounds by United States v. Gonzales, 506 F.3d 940 (9th Cir.2007) (en banc). Similarly, application of the “vulnerable victim” adjustment is not appropriate “if the factor that makes the person a vulnerable victim is incorporated in the offense guideline.” U.S.S.G. § 3A1.1 cmt. n.2. Here, it would have been inappropriate for the district court to apply § 3A1.1 on the basis of A.J.’s minority alone; “although any victim of abusive sexual contact with a minor might be described as vulnerable on account of her minority, her age does not make her any more vulnerable than other victims of this offense.” Wetchie, 207 F.3d at 634 n. 4. The district court clearly stated, however, that it was not AJ.’s age, but other factors taken in the context of her age, that made her a vulnerable victim.
At Nielsen’s sentencing, the district court stated that it was a “very difficult question” whether § 3A1.1 applied. Comparing A.J. to other minors, the district court noted that there was a reasonable argument that A.J. was “unusually precocious” rather than unusually vulnerable. Nonetheless, the court concluded that § 3A1.1 applied because A.J. came from “a broken home” (her parents were divorced); she was active on a sex chat line; she was “destitute or bored”; she was sexually active; and she was interested in marijuana.
Nielsen argues that the district court’s findings are not supported by the evidence in the record. We need not decide whether the court’s factual findings are clearly erroneous because the court’s application of § 3A1.1 was improper even assuming the accuracy of its findings. Cf. Williams, 291 F.3d at 1196 (“The factual findings related to vulnerability here were not clearly erroneous. However, we still must decide whether the application of the enhancement was permissible ... or inapplicable because the victims were ‘typical’ Mann Act victims....”) (internal citation omitted). Although the district court concluded that A.J. was an unusually vulnerable minor, it did not distinguish A.J. from the typical victim of the offense of conviction. Rather, it compared her to minors in the general population, which is not the correct inquiry.[3] Castellanos, 81 F.3d at 110.
*1036 The factors the court relied on to justify its application of § 3A1.1 — A.J.’s pre-existing interest in sex and drug use, her boredom, and her inclination to get away from her divorced parents — at most support the court’s conclusion that A. J. was “more likely than other members of the general population to become a victim to the particular crime at issue,” which we have held is insufficient to support the application of the upward adjustment. Id. Our precedents indicate that the district court’s findings are insufficient to support a § 3A1.1 adjustment when comparing A.J. to the typical victim of the offense of conviction.
In Williams, we considered the application of § 3A1.1 in a case in which the defendant was convicted of enticing or coercing two minors to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(a).[4] We reversed the district court’s application of § 3A1.1 with regard to one minor, because the court “made no findings of unusual vulnerability beyond [the victim’s] status as a drug-addicted teenage runaway.” Williams, 291 F.3d at 1196. We noted that an unstable personal life and chemical dependency are “characteristics ... typical among Mann Act victims and, without more, cannot support the application of § 3A1.1.” Id.; see also Castaneda, 239 F.3d at 981 (adopting the First Circuit’s reasoning in United States v. Sabatino, 943 F.2d 94, 102-103 (1st Cir. 1991)); United States v. Scott, 529 F.3d 1290, 1302 (10th Cir.2008) (“The Ninth Circuit has reasoned that an unstable living environment alone cannot support the vulnerability enhancement.... We agree that an unstable personal life is sufficiently common among Mann Act victims that [the 13 year old victim’s] runaway status cannot support the enhancement.”) (citing Williams, 291 F.3d at 1195-96); United States v. Beith, 407 F.3d 881, 892 (7th Cir.2005) (“Unfortunately, family discord is common among victims [of the Mann Act].... A finding of family problems, therefore, is not sufficient to support this enhancement.”). While the dissent argues that the typical victims of the offense of conviction “almost certainly do not share most or all” of the characteristics that made A.J. particularly susceptible to the criminal conduct, it does not identify any factors that meaningfully distinguish A.J. from R.K., the minor victim in Williams. See Williams, 291 F.3d at 1185 (describing unstable home life, drug use, and sexual activity).
The dissent argues that the fact that A.J. could be enticed to have sex with Nielsen itself demonstrates that she was unusually vulnerable. While this openness to enticement may distinguish A.J. from other minors, it does not provide a basis for determining that she was more susceptible than the typical victims of 18 U.S.C. § 2422, who by definition have been enticed to engage in sexual activity. Cf. Luca, 183 F.3d at 1028 (“We recognized that criminals typically direct their activities toward those who are more likely to succumb to the scheme and indicated that the district court must consider more than the fact that a defendant would likely succeed in defrauding his or her targeted victim.”) (citing Castellanos, 81 F.3d at 111).
 Our decision today does not preclude the application of the vulnerable victim adjustment in other cases involving *1037 violations of 18 U.S.C. § 2422(b). The adjustment remains available in such cases so long as the district court identifies a specific factor (or factors) that made the victim uniquely vulnerable as compared to the typical victim of the offense. See Williams, 291 F.3d at 1196 (affirming adjustment where district court found that victim had a “mental condition” resulting from being raped when she was seven); see also United States v. Archdale, 229 F.3d 861, 869 (9th Cir.2000) (affirming adjustment in case involving sexual abuse of a minor, where victim had a cognitive disability and “borderline intelligence”). Here, however, the district court failed to determine that A.J. was less able to defend herself and more deserving of societal protection than the typical minor enticed to participate in unlawful sexual activity in violation of § 2422. See Luca, 183 F.3d at 1027. Nor did the court base its application of the adjustment on a finding that, by choosing A.J. as his victim, Nielsen “reached a new level of depravity” as compared to other perpetrators of his crime.[5] Id.; see also Castellanos, 81 F.3d at 112. It was error for the district court to apply § 3A1.1 in this context.
B. Repeat and Dangerous Sex Offender Enhancement
The “Repeat and Dangerous Sex Offender Against Minors” enhancement applies if a defendant “committed the instant offense of conviction subsequent to sustaining at least one sex offense convietion[.]” U.S.S.G. § 4B1.5(a). Presenting a question of first impression in this circuit, Nielsen argues that the district court should not have applied § 4B1.5(a) to enhance his sentence because his juvenile adjudication for sexual assault does not count as a “conviction” within the meaning of the Guidelines. We agree.
The application notes to § 4B1.5(a) define “sex offense conviction” as “any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B), if the offense was perpetrated against a minor----” U.S.S.G. § 4B1.5 cmt. n.3(A)(ii). The government argues that the inclusion of the phrase “any offense” in this definition demonstrates the Sentencing Commission’s intent to count “any” prior sexual offense against a minor as a conviction, including juvenile adjudications. A plain reading of the note indicates, however, that it is meant to address which substantive offenses count as a “sex offense,” rather than define what constitutes a “conviction.”
When the Guidelines apply to juvenile adjudications, they say so expressly. Thus, § 4A1.2(d) specifically addresses “juvenile sentences,” and the application notes to § 4A1.2 describe in detail how juvenile adjudications are to be treated with regard to the term “prior sentence.” See United States v. Williams, 891 F.2d 212, 215 (9th Cir.1989) (“The sentencing guidelines include a section specifically addressing the use of prior juvenile sentences in determining the criminal history level of a defendant.”); U.S.S.G. § 4A1.2 cmt. n.7 (“[F]or offenses committed prior to age eighteen, only those that resulted in *1038 adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant’s commencement of the instant offense are counted.”). In contrast, § 4331.5(a) and its application notes include no reference to juvenile adjudications at all.
Further, the Guidelines do not use the word “conviction” to refer to juvenile adjudications. Certain juvenile adjudications count as “prior sentences” or offenses, see, e.g., U.S.S.G. § 4A1.2(d), but the word “conviction” is used only to refer to adult convictions. See U.S.S.G. § 4B1.2 cmt. n.l (defining a “prior felony conviction” as “a prior adult federal or state conviction”). This is consistent with our general understanding that juvenile adjudications do not result in “convictions.” See United States v. Doe, 53 F.3d 1081, 1083 (9th Cir.1995) (“[A] successful prosecution under the [Federal Juvenile Delinquency] Act results in a civil adjudication of status, not a criminal conviction.”); Mont.Code Ann. § 41-5-106 (“No adjudication upon the status of any youth in the jurisdiction of the court ... shall ... be deemed a criminal conviction----”); State v. Hastings, 340 Mont. 1, 171 P.3d 726, 728 (2007) (“Hastings’ youth court adjudication did not constitute' a ‘conviction’.... ”).
The government notes that juvenile adjudications qualify as predicate convictions under particular federal statutes. But Congress also specifically indicates when it intends for juvenile adjudications to be considered convictions, while imposing age and severity limitations on what sorts of adjudications may be considered. See, e.g., Sex Offender Registration and Notification Act (“SORNA”), 42 U.S.C. § 16911(8) (“The term ‘convicted’ or a variant thereof, used with respect to a sex offense, includes adjudicated delinquent as a juvenile for that offense, but only if the offender is 14 years of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse.... ”). The Guidelines do not specify which subset of juvenile adjudications may be considered “sex offense convictions” under § 4B1.5; they do not specify that juvenile adjudications may be considered at all.
We therefore hold that the district court erred in applying § 4B1.5(a), because Nielsen’s juvenile adjudication does not constitute a “sex offense conviction.” Our interpretation of § 4B 1.5(a) comports with the rule of lenity, which “applies to Sentencing Guidelines as well as to penal statutes.” United States v. Fuentes-Barahona, 111 F.3d 651, 653 (9th Cir.1997) (per curiam).
The government argues that any error in applying § 4B1.5(a) was harmless, because Nielsen could be considered a “repeat and dangerous sex offender” under § 4B1.5(b), if not subsection (a). See U.S.S.G. § 4B1.5(b) (providing for an enhancement “[i]n any case in which the defendant’s instant offense of conviction is a covered sex crime ... and the defendant engaged in a pattern of activity involving prohibited sexual conduct”). However, if the district court had not imposed the “vulnerable victim” adjustment, Nielsen’s Guidelines range would have been lower if the court had applied subsection (b) instead of subsection (a), so the error in treating Nielsen’s prior adjudication as a conviction under § 4B 1.5(a) was not harmless. See United States v. Munoz-Camarena, 631 F.3d 1028, 1031 (9th Cir.2011) (per curiam).
C. Substantive Reasonableness
Because we conclude that the district court erred in calculating the Guidelines range for Nielsen’s sentence, we do not reach the question of whether his sentence
*1039 was substantively reasonable. See id. (citing United States v. Carty, 520 F.3d 984, 991-92 (9th Cir.2008) (en banc)).
IV. CONCLUSION
For the foregoing reasons, we VACATE Nielsen’s sentence and REMAND for re-sentencing in conformity with this opinion.

. We use the initials "A.J.” to protect the identity of the minor victim.

. The dissent argues that the adjustment should apply because A.J. was not in a position of sufficient strength to resist the 6'4", 370-pound Nielsen. But it points to nothing in the record indicating that A.J.’s size made her more vulnerable than the typical minor victim of the offense of conviction, or even other minors in general. It is more reasonable to assume that the typical victim of the crime at issue would be equally vulnerable when faced with Nielsen's larger size. Cf. United States v. Holt, 510 F.3d 1007, 1011 (9th Cir.2007) (“A district court can apply the vulnerable victim enhancement where a child is so young and small that he or she is less *1035 able to resist than other child victims of pornography.”) (emphasis added); United States v. Scott, 529 F.3d 1290, 1303 (10th Cir.2008) (victim was "unusually vulnerable even among Mann Act victims" because she was “particularly small and frail ... for her age”).

. The dissent asserts that we should defer to the district court's decision to apply the adjustment, but no deference is warranted where the district court applies an incorrect legal standard. See United States v. Petersen, 98 F.3d 502, 505-06 (9th Cir.1996).

. Although Williams addressed a violation of 18 U.S.C. § 2422(a), while Nielsen was convicted of violating § 2422(b), the holding of that case is still relevant here. The two subsections of § 2422 share a common lineage in the Mann Act of 1910, and they are nearly identical in wording, except that § 2422(b) specifically addresses minors. See United States v. Laureys, 653 F.3d 27, 41-42 (D.C.Cir. 2011) (Henderson, J., dissenting) (tracing origin of § 2422(b) to the Mann Act of 1910).

. The dissent mistakenly argues that the adjustment applies because Nielsen's conduct demonstrated a "new level of depravity” as compared to other offenders. But it is the "defendant's choice of victim[]” that must show an "extra measure of criminal depravity” for the adjustment to apply; the depravity of the offender’s conduct in matters other than his choice of victim is legally irrelevant to the applicability of § 3A1.1. See Castellanos, 81 F.3d at 111. The fact that Nielsen’s conduct involved sex, drugs, and other indications of moral depravity was properly accounted for under other sentencing enhancements and the court’s consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).