**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Stacy WEISCHEDEL, Defendant–**
**Appellant.**

No. 98–30324.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1999.

Filed Feb. 1, 2000.

Wendy Holton, Helena, Montana, for the defendant-appellant.

Bernard F. Hubley, Assistant United States Attorney, Helena, Montana, for the plaintiff-appellee.

Before: SCHROEDER and BEEZER, Circuit Judges, and SCHWARZER,[1] District Judge.

SCHROEDER, Circuit Judge:

Stacy Weischedel appeals from her sentence of life imprisonment after agreeing to plead guilty to six counts related to the murder of car salesman Peter Stucky. Appellant's husband, Eric Weischedel, shot Stucky in the back of the head after the Weischedels lured Stucky to a remote area. Appellant confessed to the couple's crimes in return for not having to face the death penalty.

The most important issue in this appeal is whether the district court properly adjusted appellant's sentencing guideline range upward two levels pursuant to U.S.S.G. § 3A1.1(b) for committing a crime involving a "vulnerable victim." We review a finding of vulnerability for clear error. See United States v. Peters, 962 F.2d 1410, 1416 (9th Cir.1992). We affirm because the district court imposed the adjustment after looking to the surrounding circumstances of the crime in addition to the particular characteristics of the victim, as permitted under the law of this circuit.

The facts are not materially disputed. Appellant and her husband formed a plan in April of 1998 to take a test drive with a car salesperson, kill the salesperson during the drive, and then steal the vehicle. Pur-

suant to the plan, the Weischedels on April 18 met with Stucky; who was a car salesman in Lewiston, Idaho. Pretending to be interested in purchasing a truck, the couple asked Stucky for a test drive. During the drive appellant was behind the wheel and Stucky was in the front passenger seat, while Eric sat in the back seat directly behind Stucky. Appellant drove to a remote area, where Eric shot Stucky in the back of the head with a semi-automatic pistol. The couple drove first into Washington, where they stopped to remove Stucky's wallet and conceal his body, and then into Montana, where they eventually dumped Stucky's body. The Weischedels used Stucky's cash and credit cards to make purchases along the way. A Montana Highway Patrol officer spotted them the next day, and after a high-speed chase the couple fled on foot and hid in a haystack. The Weischedels were apprehended in the haystack on April 20.

On April 22, 1998, before being charged by the United States, appellant signed a Memorandum of Understanding with the U.S. Attorney in which she agreed to confess voluntarily her role in Stucky's death and to provide information to help locate Stucky's body. She also agreed that her sentence upon pleading guilty to federal charges would be life imprisonment without parole. In return, the United States and the states of Washington, Idaho, and Montana agreed to a single federal prosecution in Montana in which the United States would not seek the death penalty. The parties all signed the agreement with the understanding that appellant would receive a life sentence without the possibility of parole. Nevertheless, it is undisputed that the Memorandum did not constitute a formal plea agreement, and the government does not rely on the Memorandum to oppose this appeal.

At sentencing, the district court accepted the presentence report's recommenda-

<hr/>

1. Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

tion that appellant's guideline sentencing range be increased by two levels because Stucky was a "vulnerable victim." *See* U.S.S.G. § 3A1.1(b). In granting the adjustment, the district court referred to Stucky's age and his occupation as a car salesman and then described in some detail the circumstances of the crime that made Stucky particularly vulnerable. These circumstances included Stucky's position in the front passenger seat and the fact that he was driven to a remote area under the ruse of a potential sale.

The relevant guideline provides: "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by two levels." U.S.S.G. § 3A1.1(b). The commentary defines "vulnerable victim" as "a person ... who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, commentary, application note 2.

Appellant correctly notes that Stucky's age and physical condition at the time of his murder do not alone warrant an upward adjustment. *See United States v. Luca,* 183 F.3d 1018, 1026 (9th Cir.1999) ("Age, standing alone ... does not establish someone as a specific victim."). Stucky was 60, and most of the cases where age is a factor in such an adjustment involve victims over 70. *See, e.g., United States v. Luscier,* 983 F.2d 1507, 1509 (9th Cir.1993) (83 year old victim); *United States v. Gonzalez,* 183 F.3d 1315, 1327 (11th Cir.1999) (72 year old victim); *United States v. Hardesty,* 105 F.3d 558, 560 (10th Cir.1997) (90 year old victims). There is nothing in the record suggesting that Stucky's physical condition was impaired. He was gainfully employed in an occupation requiring at least some physical mobility and much personal interaction. Age, however, was not the only basis for the district court's decision to adjust appellant's sentence.

Appellant contends that the district court improperly relied upon Stucky's occupation as a car salesman in making the adjustment. The commentary to the "vulnerable victim" guideline indicates that a court should not base the adjustment solely on a victim's occupation, stating that "a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank." U.S.S.G. § 3A1.1, commentary, application note 2.

■] All of the courts that have considered the issue appear to have held that it is not appropriate to base a vulnerability adjustment on an abstract description of the victim's occupation. *See United States v. Robinson,* 119 F.3d 1205, 1219 (5th Cir. 1997); *United States v. Morrill,* 984 F.2d 1136, 1138 (11th Cir.1993) (en banc). For a victim in a particular occupation to qualify as "vulnerable," there must have existed other, case-specific circumstances that made that individual "particularly susceptible" to the crime committed. *See United States v. James,* 139 F.3d 709, 714 (9th Cir.1998). For example, in *James* this court upheld a finding that the bank teller in question was particularly susceptible to the robbery committed in that case because her pregnancy made her more likely to succumb to the defendant's threats of bodily harm. *James,* 139 F.3d at 714.

The district court in this case did not find Stucky to be vulnerable solely because he was a car salesman. Rather, the court properly considered certain aspects of Stucky's job as part of the individual circumstances that made him particularly vulnerable to the crimes the Weischedels chose to commit. The court stressed the Weischedels' ease in luring Stucky to his death by taking advantage of what he was required to do in his line of work. No court has held that a district judge must ignore a victim's occupation in deciding whether to impose the "vulnerable victim" adjustment.

The closest case to this one that we have found is *United States v. Malone,* 78 F.3d 518 (11th Cir.1996). In *Malone,* the Eleventh Circuit held that the fact that the victim's occupation as a cab driver required him to drive to unknown and

perhaps dangerous locations could be considered as one of the surrounding circumstances in the sentencing of defendants who called the victim's cab for the purpose of robbing him. The court declined to consider whether all cab drivers, solely by virtue of their vocation, are to be considered vulnerable victims whenever they are carjacked. *Id.* at 522. We agree with the Eleventh Circuit's decision in *Malone*. The district court in this case did not err in referring to the victim's occupation as one of many circumstances supporting the adjustment.

■ The appellant also contends that the "vulnerable victim" guideline excludes consideration of any circumstances other than the personal traits of the victim. This position is not supported by the language of the provision, which includes a catch-all that permits the court to consider, in addition to mental or physical characteristics of the victim, any circumstance rendering the victim "otherwise particularly susceptible" to the crime committed. Our court has recognized that surrounding circumstances are to be considered. In *United States v. Peters*, 962 F.2d 1410 (9th Cir.1992), we emphasized that a departure based on the "otherwise particularly susceptible" prong of the vulnerable victim definition must be based on a consideration of "the characteristics of the defendant's chosen victim, the victim's reaction to the criminal conduct, and the circumstances surrounding the criminal act." *Id.* at 1417.

Appellant cites to language in *United States v. Castellanos*, 81 F.3d 108 (9th Cir.1996), where we held that a vulnerable victim finding could not be based upon conduct that targeted the entire Spanish-speaking population of southern California. We said there that the adjustment should be used for those victims "who are in need of greater societal protection" and "who, when targeted by a defendant, render the defendant's conduct more criminally depraved." *Id.* at 111. Appellant argues that this language suggests that only the characteristics of the victim can be consid-

ered, excluding from consideration the defendant's conduct, the activity in which the victim was engaged, and any other surrounding circumstances. This position is not supported by the language we used in *Castellanos* or our holding, which was concerned with making sure the "vulnerable victim" analysis focused on the particular vulnerability of the individual victim's situation, rather than upon attributes common to a large segment of the population.

It is true that in a footnote in *United States v. Luca*, 183 F.3d 1018 (9th Cir. 1999), we suggested that there may be some inconsistency between the analysis we employed in *Peters* and that in *Castellanos*. In *Luca* we said: "To the extent that *Castellanos* mandates a more narrow analysis than that required by *Peters*, the cases appear inconsistent. However, since both modes of analysis focus primarily on the victim and the district court failed to explain why membership in the church made Luca's victims more susceptible, we need not resolve that apparent inconsistency." 183 F.3d at 1027 n. 6.

After looking carefully at *Peters* and *Castellanos*, we conclude that while they employ different words, their analysis is consistent. *Peters* held that the "vulnerable victim" adjustment was appropriate where the defendant's mail fraud scheme targeted people with poor credit histories. We said that in making the sentencing adjustment we must look to the characteristics of the victim and the "circumstances surrounding the criminal act." *Peters*, 962 F.2d at 1417. In *Castellanos*, where the targeted victims shared no characteristic that would make them particularly vulnerable to fraud, we said a finding of group vulnerability was inappropriate without individualized circumstances that "render the defendant's conduct more criminally depraved." *Castellanos*, 81 F.3d at 111. In both cases, we examined the personal traits of the victims and the specific circumstances in which the victims found themselves when the crimes were committed, and asked whether there were any

characteristics or circumstances that made the victims particularly susceptible to the crime. In *Peters*, there was such a characteristic: poor credit history. In *Castellanos*, where the target group shared only the ability to speak Spanish, there was none.

■ Here the district court properly looked to the particularly vulnerable circumstances in which Stucky found himself after being placed in the front seat with his killer behind him and driven to a remote spot, at the behest of persons he believed his job obligated him to accommodate. The district court did not abuse its discretion in imposing the "vulnerable victim" adjustment.

■ Appellant raises one additional issue. She claims the district court abused its discretion by denying her request to subpoena more than two witnesses to testify to her duress defense at sentencing. Prior to her sentencing hearing, appellant filed an *ex parte* motion under Federal Rule of Criminal Procedure 17(b) for the issuance of subpoenas to several witnesses whom appellant was financially unable to bring to court. She intended to offer these witnesses in support of her defenses at sentencing of "imperfect duress" and aberrant behavior. Specifically, she claims that her participation in these offenses was the result of spousal abuse at the hands of her husband Eric and the effects of battered woman syndrome.

■ A district court can properly deny a Rule 17(b) subpoena request when the testimony sought would be cumulative. *See United States v. Sims*, 637 F.2d 625, 629 (9th Cir.1980); *United States v. Smith*, 924 F.2d 889, 896 (9th Cir.1991). The district court granted the motion in part and issued subpoenas to Spring Witham, appellant's mother, and Jerry Pickering, appellant's ex-husband. The district court declined to subpoena (1) Joe Bower, a friend of appellant's, (2) Steve Leslie, Jr., a high school acquaintance of appellant's, (3) Richard Seward, a person with whom the Weischedels resided temporarily, and (4) Jennifer Selvog, Eric Weischedel's ex-wife.

This court has held that evidence of spousal abuse and "battered woman syndrome" may support a downward departure for coercion or duress under U.S.S.G. § 5K2.12. *See United States v. Johnson*, 956 F.2d 894, 899–900 (9th Cir.1992); *United States v. Ramos–Oseguera*, 120 F.3d 1028, 1041 (9th Cir.1997). Therefore, although the observations of at least Bower, Leslie, and Seward regarding appellant's fear of Eric and of his abuse were relevant to appellant's duress claim, appellant's motion to the district court did not explain what the testimony of any of the additional witnesses could add to the testimony of her mother and ex husband, who both testified regarding the abuse Eric inflicted on appellant. The district court did not abuse its discretion when it permitted appellant to subpoena two, and not six, witnesses on the duress defense.

AFFIRMED.