circumscribed by the Act. *See Colacurcio,* 84 F.3d at 328.

Because we are mindful that district judges from time to time rely on magistrate judges to accept jury verdicts, our decision does not leave district courts and magistrates without practical alternatives. Under *Foster,* the magistrate judge has authority to undertake "acceptance and filing of a verdict." We acknowledge, however, that the course of jury deliberations is unpredictable and that there is always a risk that the magistrate judge will be called upon to do more than anticipated. In light of this risk, the district judge has several other options, such as asking another district judge to take the verdict and, of course, obtaining consent from the parties to the magistrate judge presiding over at least certain aspects of jury deliberations. Although the Act encourages experimentation and delegation, under the circumstances presented here this cannot be accomplished at the expense of defendants without their consent. We believe that our decision strikes a practical balance consistent with the purposes of the Act.

REVERSED AND REMANDED.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roderick Loren WETCHIE,**
**Defendant–Appellant.**

No. 99–30152.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 18, 2000.

Decided March 16, 2000.

Fredilyn Sison, Federal Defenders, Boise, Idaho, for the defendant-appellant.

James M. Peters, Assistant United States Attorney, Boise, Idaho, for the plaintiff-appellee.

Before: BEEZER, O'SCANNLAIN, and THOMAS, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether the vulnerable victim adjustment of the Sentencing Guidelines can be applied to enhance the sentence of a defendant convicted of abusive sexual contact with a minor where the victim was sleeping at the time of the abuse.

## I

Roderick Loren Wetchie worked as a house parent at the Youth Transitional Living Center (YTLC), a group home for children who are wards of the court. The YTLC is operated by the Shoshone–Bannock Tribe and is located on land within the limits of the Fort Hall Indian Reservation. On October 14, 1998, while conducting bed checks, Wetchie entered a bedroom which the victim, an 11–year–old girl, shared with other YTLC residents. The victim was sleeping in the top bunk of a bunk bed. Wetchie noticed that the victim was sleeping on her back, wearing only underwear and not covered by any bed covers. According to Wetchie, he rubbed the victim's genital area over her panties for several seconds, which caused her to awaken. According to the victim, Wetchie also touched her underneath her underwear. The victim reported Wetchie's conduct to another employee of the YTLC, and Wetchie was fired. He was subsequently indicted on one count of abusive sexual contact committed within Indian country, in violation of 18 U.S.C. §§ 1153, 2244(a)(1).

On February 16, 1999, Wetchie pleaded guilty to the indictment pursuant to a plea agreement. At sentencing, the district court determined, over Wetchie's objection, that the vulnerable victim adjustment of § 3A1.1 of the U.S. Sentencing Guidelines ("U.S.S.G.") applied. The district court reasoned that the victim's being asleep made her vulnerable by diminishing her ability to resist or to call for help. The district court also denied Wetchie's request for a downward departure based on aberrant behavior, citing a "long history of offenses not counted in his criminal history." Adopting the presentence report's Guidelines sentence range of 24 to 30 months, the district court sentenced Wetchie to 24 months' imprisonment.

Wetchie timely appeals his sentence, challenging both the imposition of the vulnerable victim adjustment and the denial of his downward departure request.

## II

■ The principal issue is whether the district court committed clear error in finding Wetchie's victim vulnerable based solely on the fact that she was sleeping at the time of the offense.[1] Wetchie argues that the district court's application of the vulnerable victim adjustment was improper, asserting that a sleeping victim cannot be considered vulnerable in the absence of other aggravating circumstances. Wetchie

---

1. We review a district court's interpretation of the Sentencing Guidelines de novo and a finding of victim vulnerability for clear error.

*See United States v. Randall,* 162 F.3d 557, 560 (9th Cir.1998).

notes that no federal appellate court has applied the adjustment based on a victim's sleeping state alone. As observed by the district court and the government, however, no published appellate court opinion has rejected such an adjustment either.

### A

■■■ We begin our analysis with the text and commentary of the Sentencing Guidelines. Section 3A1.1(b)(1) of the Guidelines calls for increasing a sentence "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." The commentary accompanying § 3A1.1 defines a "vulnerable victim" as one "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. 2.[2] Examples of appropriate applications include enhancing the sentence of a fraud defendant who marketed an ineffective cure to cancer patients or a robbery defendant who preyed on a handicapped person. *See id.* The adjustment should not be applied if the factor giving rise to vulnerability is already incorporated in the offense guideline. *See id.*[3]

The plain meaning of § 3A1.1(b)(1) supports application of its adjustment to Wetchie's case. Because Wetchie's victim was asleep, she may be deemed either "unusually vulnerable" to his conduct due to her "physical condition" or "otherwise particularly susceptible to [his] criminal conduct." U.S.S.G. § 3A1.1 cmt. 2. As the district court found, the victim's being asleep "diminished [her] ability to resist the Defendant or cry out, [rendering her] essentially unable under any circumstances to resist his physical advance, unable to express any objection, unable to cry out, unable to do really anything until after the act was already underway or completed."

The application examples given in the commentary accompanying § 3A1.1 also support applying the enhancement to Wetchie's sentence. In the case of the fraud defendant who markets an ineffective cancer cure or the robbery defendant who selects a handicapped target, a certain characteristic renders the victim unusually vulnerable, i.e., less able to resist than the typical victim of the offense of conviction.[4] Such increased susceptibility encourages criminal conduct by making it easier to commit, resulting in criminal acts that might not have taken place at all if not for the victim's heightened vulnerability. Here, a certain characteristic of the victim—her being asleep—rendered her less able to resist criminal conduct than a typical victim. Such vulnerability may well have encouraged Wetchie's act; if Wetchie's victim had been awake, it is quite possible (and perhaps even likely) that he would not have committed this offense.

**2.** Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute or is inconsistent with a guideline. *See Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

**3.** In Wetchie's case, the victim's age and the fact that she was under his supervision cannot be considered for purposes of applying the vulnerable victim adjustment because they have already been taken into account through other adjustments. *See* U.S.S.G. § 2A3.4(b)(1) (providing for offense level adjustment based on the victim's age); *id.* § 2A3.4(b)(3) (providing for offense level adjustment if the victim was under the care, custody, or supervisory control of the defendant).

**4.** The appropriateness of conceptualizing the vulnerable adjustment in terms of victims who are more vulnerable than usual victims of the offense is confirmed by the rule that the adjustment should not apply when vulnerability is already reflected in the offense guideline. For example, although any victim of abusive sexual contact with a minor might be described as vulnerable on account of her minority, her age does not make her any more vulnerable than other victims of this offense; enhancement of the defendant's sentence based only on the victim's status as a minor would therefore be inappropriate. This typicality notion is comparable to the "heartland" concept that was the focus of *Koon v. United States*, 518 U.S. 81, 95–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

**B**

Our precedents interpreting the vulnerable victim adjustment make clear the appropriateness of applying it here. In the recent case of *United States v. Weischedel*, 201 F.3d 1250, (9th Cir.2000), we upheld application of the adjustment in a case involving a couple's carefully planned murder of a 60–year–old car salesman. The district court in *Weischedel* relied on a variety of factors in applying the vulnerable victim adjustment, including (1) the victim's age, (2) circumstances related to the victim's employment as a car salesman, and (3) the aspects of his job duties that made him particularly susceptible to the Weischedels' criminal plan. We found no abuse of discretion, noting that "the district court properly looked to the particularly vulnerable circumstances in which [the victim] found himself after being placed in the front seat with his killer behind him and driven to a remote spot, at the behest of persons he believed his job obligated him to accommodate." *Id.* at 1255. Consistent with the mode of analysis approved in *Weischedel*, the district court here found Wetchie's victim vulnerable only after carefully reviewing her traits and the situation in which she found herself when Wetchie's crime was committed.

In *Weischedel*, we addressed the tension that arguably exists between two of our prior cases analyzing the vulnerable victim adjustment, *United States v. Peters*, 962 F.2d 1410 (9th Cir.1992), and *United States v. Castellanos*, 81 F.3d 108 (9th Cir.1996). We stated that "[a]fter looking carefully at *Peters* and *Castellanos*, we conclude that while they employ different words, their analysis is consistent." *Weischedel*, 201 F.3d at 1254. Both cases require "examin[ation of] the personal traits of the victims and the specific circumstances in which the victims found themselves when the crimes were committed [to determine] whether there were any characteristics or circumstances that made the victims particularly susceptible to the crime." *Id.* Just such an examination was

undertaken in Wetchie's case. Accordingly, there was no abuse of discretion.

*Peters* and *Castellanos* confirm the appropriateness of the adjustment in Wetchie's case. In *Peters*, we upheld application of the enhancement in a fraud case in which the defendants solicited funds for "pre-approved" credit cards from individuals with poor credit histories. 962 F.2d at 1417–18. We set forth the following test for applying the enhancement:

> [T]he sentencing court [can] consider factors beyond the victim's age, physical and mental condition. The sentencing court must consider the characteristics of the defendant's chosen victim, the victim's reaction to the criminal conduct, and the circumstances surrounding the criminal act. The sentencing court must then determine whether the defendant could reasonably have anticipated the victim's reaction.

*Id.* at 1417. As required by *Peters*, the district court here considered the victim's characteristics, noting that she was sleeping at the time of the offense, and analyzed how her ability to react to Wetchie's criminal conduct was impaired by her being asleep. The district court then considered the surrounding circumstances, including the fact that Wetchie's bed check duty allowed him to take advantage of sleeping victims. Finally, the district court determined that Wetchie reasonably could have anticipated how the victim's vulnerability would affect her ability to react to his crime. Under *Peters*, the adjustment was proper.

In *Castellanos*, we rejected application of the adjustment in a fraud case where the district court found that the defendant, head of a firm he touted as a "proudly Hispanic company," focused his criminal efforts on Spanish-speakers, "many of whom may have placed trust in the defendant because he was one of their own." 81 F.3d at 110. We stated that although Spanish-speaking individuals were more likely to be victimized by a fraud committed by a Spanish-speaking defendant, it

was inappropriate to find victims vulnerable "simply because they were statistically more likely to fall prey to the defendant's crime." *Id.* at 110–11. Rather, victims who are vulnerable within the meaning of § 3A1.1 are "those who are in need of greater societal protection," or victims who, "when targeted by a defendant, render the defendant's conduct more criminally depraved." *Id.* at 111.

With respect to the statement in *Castellanos* that vulnerable victims are "those who are in need of greater societal protection," it is significant to note that at common law burglary consisted of "a breaking and entering of a dwelling of another *in the nighttime* with the intent to commit a felony therein." *Black's Law Dictionary* 197–98 (6th ed.1990) (emphasis added). Although the nighttime requirement has been abandoned by most jurisdictions, it reflects the reality, noted by the Supreme Court in extending Fourth Amendment protections to overnight guests, that "[w]e are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings." *Minnesota v. Olson,* 495 U.S. 91, 99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Furthermore, preying upon sleeping victims would appear to be "more criminally depraved" under *Castellanos* than victimizing people who are awake and alert. *Cf. United States v. Randall,* 162 F.3d 557, 560 (9th Cir.1998) (finding it "more criminally depraved" to victimize gullible individuals). Nothing in *Castellanos* would bar the adjustment here.

In sum, in light of *Weischedel, Peters,* and *Castellanos,* the district court correctly applied the vulnerable victim adjustment based on the fact that Wetchie's victim was asleep.

### III

■ Wetchie challenges the district court's decision not to grant him a downward departure for aberrant behavior. Although a district court's erroneous determination that it lacks the legal authority to grant a departure on a certain ground is reviewable as an error of law, *see Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), a discretionary refusal to depart downward is not reviewable in this court. *See, e.g., United States v. Eaton,* 31 F.3d 789, 793–94 (9th Cir.1994) (finding no authority to review the discretionary denial of a downward departure for aberrant behavior); *United States v. Burnett,* 16 F.3d 358, 361 (9th Cir.1994) (same).

The district court here recognized its legal authority to grant a departure based on the ground of aberrant behavior, expressly noting that "the Ninth Circuit has recognized that departures of this type may be granted." Based on Wetchie's "long history of offenses not counted in his criminal history," however, the district court declined to depart downward. Because this decision was clearly discretionary, we lack jurisdiction to review it.

### IV

Adjusting a defendant's sentence upward based on the fact that the victim was sleeping when the crime was committed is permissible under the Guidelines. Wetchie's sentence was proper in all respects.

AFFIRMED.