# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3971

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | South Dakota. |
| | * | |
| Donroy Brings Plenty, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

Submitted: May 14, 2003
Filed: July 8, 2003

_____

Before LOKEN, Chief Judge, BRIGHT, Circuit Judge, and SMITH CAMP[1], District Judge.

_____

SMITH CAMP, District Judge.

On August 28, 2002, a jury found Defendant Donroy Brings Plenty guilty of first degree burglary while in Indian country in violation of S.D. Codified Laws § 22-32-1(3) and 18 U.S.C. § 1153. Brings Plenty entered the victim's home in the

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska sitting by designation.

evening, after she had fallen asleep, and assaulted her. At sentencing, the district court enhanced the Defendant's offense level on two bases, finding that the victim was unusually vulnerable and that she had been physically restrained. Brings Plenty appeals from these enhancements. Because we find that the district court provided factually supported, principled reasons for the application of the enhancements, the sentence of the district court is affirmed.

After returning home from an evening of socializing, Sherri Black Bear climbed in bed with three of her children who ranged in age from 5 to 12 years. She went to sleep. She woke to someone hitting her in the face with his fist. The attack occurred in the dark. She looked up after the initial blow and saw the person whom she identified as Brings Plenty. Brings Plenty continued to hit Black Bear and then dragged her by the ankle off the bed and into the living room. She resisted by trying to hold onto something that would prevent her movement. Brings Plenty continued to drag her by the hair to the doorway of the house, while he continually struck her and kicked her. At one point, one of Black Bear's children tried unsuccessfully to intervene.

At the time of the burglary, Black Bear lived with her stepfather, Richard White Calf, who woke from his sleep and came into the living room. White Calf told Brings Plenty that he had called the police, and Brings Plenty left the residence. Black Bear testified that she was lying in the doorway of the house when Brings Plenty left. The following day, Black Bear went to a local hospital for treatment.

The district court's imposition of the enhancements is based on factual findings subject to review for clear error. *United States v. Moskal*, 211 F.3d 1070, 1073 (8th Cir. 2000). The district court's interpretation of the United States Sentencing Guidelines and application of those Guidelines to the facts of the case are reviewed

de novo. *United States v. Blanton*, 281 F.3d 771, 775 (8th Cir. 2002).

Brings Plenty was convicted by a jury of first degree burglary on August 28, 2002. Because there is no federal burglary statute, South Dakota law was used to define the elements of the offense. South Dakota Codified Laws § 22-32-1(3) defines first degree burglary as the unlawful entry into a structure with the intent to commit a crime therein, when the offense is committed "in the nighttime." See *Goodroad v. Solem,* 406 N.W.2d 141, 146 (S.D. 1987) (holding that the "nighttime" component aggravates the offense.)

The trial court enhanced Brings Plenty's base offense level by two points pursuant to (2001) U.S. Sentencing Guidelines Manual § 3A1.1(b)(1) ("U.S.S.G."), relating to vulnerable victims. The district court found the victim's state of being asleep "diminished her capacity to resist the defendant or to cry out, and essentially rendered her unable to resist his physical advance and unable to express any objection; unable to really do anything until after the act was already under way or completed." Sentencing Transcript at 9.

Brings Plenty argues that the district court erred in treating a sleeping victim as being unusually vulnerable given that an element of the crime for which Brings Plenty was convicted was that it occur "in the nighttime." Brings Plenty argues that it is not "unusual" for a victim of a burglary that occurs during the nighttime to be asleep. Brings Plenty also contends that the district court's failure to make a particularized finding that Black Bear's vulnerability was "unusual" when compared to other victims of nighttime burglaries is grounds for reversal.

The district court properly acknowledged that under U.S.S.G. § 3A1.1(b)(1), an offense level may be enhanced "[i]f the defendant knew or should have known that

a victim of the offense was a vulnerable victim." Application Note 2 defines a "vulnerable victim" as a person who is the victim of the offense and who is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." To establish the importance of the "unusualness" component of the definition, Brings Plenty relies on *United States v. Paige*, 923 F.2d 112, 113-14 (8th Cir. 1991) (holding that young, Caucasian clerks who appeared to be inexperienced and naive were not unusually vulnerable) and *United States v. Ravoy*, 994 F.2d 1332, 1335 (8th Cir. 1993)(holding that the victims of an equity skimming scheme were not unusually vulnerable based on their financial situations where the evidence did not demonstrate that they were coerced or that the selling prices used by defendant were below the fair market values.) The Court is not persuaded that the distinctions made in those cases are particularly instructive in this case.

Brings Plenty also refers to *United States v. Wetchie*, 207 F.3d 632 (9th Cir.) cert. denied 531 U.S. 854 (2000), which contains a quotation regarding burglary from Black's Law Dictionary that supports the proposition that victims of burglary are often sleeping. The *Wetchie* case also acknowledges, however, that we "are at our most vulnerable when we are asleep, because we cannot monitor our own safety or the security of our belongings." *Id*. at 636 citing *Minnesota v. Olsen,* 495 U.S. 91, 99 (1990).

The government relies on *Wetchie* as support for the district court's imposition of the vulnerable victim enhancement. The Ninth Circuit Court in *Wetchie* affirmed a district court's imposition of the vulnerable victim enhancement on the sole basis that the victim was asleep at the time the offense commenced, stating:

As the district court found, the victim's being asleep "diminished [her]

-4-

ability to resist the Defendant or cry out, [rendering her] essentially unable under any circumstances to resist his physical advance, unable to express any objection, unable to cry out, unable to do really anything until after the act was already underway or completed.

*Id.* at 634.

The unusual vulnerability addressed in *Wetchie* is also present in this case. We find that the district court's stated reasons for enhancing Brings Plenty's offense level on the basis of the victim's vulnerability were sufficiently particularized and remarkably similar to the district court's justification that was affirmed in *Wetchie*.

We conclude that the district court properly imposed the vulnerable victim enhancement in this case. Black Bear was asleep when Brings Plenty entered her residence and when the assault began. She did not have the ability to phone law enforcement, to run away, to move the location of the assault away from her children, or to fight back. Under the South Dakota burglary statute, a victim of first degree burglary need not be in the structure and need not be sleeping. The fact that Black Bear was sleeping, and that upon Brings Plenty's initial observations of her he knew or should of known that she was sleeping, establishes that Black Bear was unusually vulnerable as used in the sentencing guidelines. For all these reasons, the district court's enhancement under U.S. S.G. §3A1.1(b)(1) is affirmed.

Brings Plenty also contends that the district court erred in enhancing Brings Plenty's offense level by two points pursuant to U.S.S.G. § 3A1.3 for restraining Black Bear. Section 3A1.3 provides, "If a victim was physically restrained in the course of the offense, increase by 2 levels." Brings Plenty argues that the actions that he took against Black Bear were part of the underlying offense, the assault, and therefore no enhancement should have been imposed. Brings Plenty contends that

the restraint-of-victim enhancement must be for conduct taken in the course of the offense and not for conduct that is part of the offense itself.

The district court found that "the victim was grabbed by her ankle, pulled off of the bed, pulled from her bedroom into the living room. She tried to stop from being pulled by grabbing onto something and was kicked so that she couldn't stopped [sic] her forward movement. She was pulled into the living room where she was kicked further." Sentencing Transcript at 14. The district court concluded that this conduct constituted physical restraint "in the sense that the victim's arms were held," and likened the conduct to "being bound by something." *Id.* at 15. Upon these findings, the district court concluded that enhancement for physical restraint should be applied.

The definition of "physically restrained" is found in the Commentary to Section 1B1.1(h): "the forcible restraint of the victim such as being tied, bound, or locked up." The Eighth Circuit has stated that the words "such as" within that definition are illustrative examples and "do not limit the type of conduct that may constitute a physical restraint." *Arcoren v. United States*, 929 F.2d 1235, 1246 (8th Cir. 1991) quoting with approval *United States v. Stokley*, 882 F.2d 114, 116 (4th Cir. 1989)("a victim need not be tied or bound up so that his movement is completely restricted.") See also, *United States v. Kime,* 99 F.3d 870, 886 (8th Cir. 1996) (affirming imposition of physical restraint enhancement where victim was pulled into a van, beaten severely, and held down while one of the defendants attempted to cut him.)

Brings Plenty relies heavily on *United States v. Checora*, 175 F.3d 782, 789-90 (10th Cir. 1999), in support of his argument that the dragging of Black Bear was part of the underlying offense - the assault, and that dragging does not rise to the level of

forcible restraint required by the guideline. The district court in *Checora* imposed the two-level enhancement for victim restraint on the basis that the defendants had dragged the victim from the place where they had beat him to the place where they eventually killed him. *Id.* at 790. The Tenth Circuit Court of Appeals upheld the enhancement, but not based on the dragging of the victim. Rather, the appellate court affirmed on the alternate ground that the defendants physically restrained the victim when, to prevent the victim's escape, the defendants chased and tackled him to the ground. *Id.* at 791.

Brings Plenty would have this Court interpret *Checora* as support for the fact that dragging Black Bear was part and parcel of the underlying offense. Contrary to the inference suggested by Brings Plenty, *Checora* does not stand for the proposition that dragging is an insufficient basis for finding forcible restraint. Although the Tenth Circuit Court relied on alternate factual grounds - the chasing and tackling of the victim to prevent his escape - as the basis for the victim restraint enhancement, the court apparently did so because the facts demonstrated that before the defendants began to drag the victim to the place where they eventually killed him, the victim already had been so badly beaten that he was unconscious and it was not necessary for the defendants to forcibly restrain him to prevent his escape. *Id.* at 787.

Relying on Black Bear's testimony, the district court found that Black Bear attempted to resist the forward dragging movement by grabbing onto something. Brings Plenty was exercising control over Black Bear that prevented her freedom of movement, prevented her escape, and facilitated the assault by allowing him to continue to kick and strike her. This Court concludes that as Brings Plenty dragged Black Bear off the bed and through the house, he was forcibly restraining her, and the district court's decision to enhance the offense level on the basis of physical restraint is affirmed.

For all these reasons, the sentence imposed by the district court is affirmed.

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHT CIRCUIT.