CALLAHAN, Circuit Judge,
dissenting:
I respectfully dissent. William Nielsen coerced a seventh-grade girl to abscond from her home, take ■ an overnight bus from Wyoming to Montana, do illegal drugs, and engage in four days of sadomasochistic sex with a man she knew was a registered sex offender. It strains credulity to say, as the majority does, that a child who can be coerced into doing those things is not unusually vulnerable. What is worse, by holding that a vulnerable victim adjustment under Sentencing Guidelines § 3A1.1 was unavailable in this case, the majority makes the adjustment unavailable for all but the most defenseless victims of sexual coercion. There is no indication the Sentencing Commission intended § 3A1.1 to be such a toothless watchdog.
The district court did not err in enhancing Nielsen’s sentence under Sentencing Guidelines § 4B1.5(a). Nothing in that Guideline excludes juvenile adjudications from the definition of “sex offense conviction.” We must rely on the Guidelines’ plain language, rather than insert words it does not contain or look to irrelevant state law. Even if the district court erred in applying § 4B1.5(a), that error was harmless because Nielsen qualified for a “pattern of activity” enhancement under § 4B1.5(b). Finally, Nielsen’s sentence is substantively reasonable.
I. Vulnerable victim adjustment
Section 3A1.1 of the Sentencing Guidelines provides for a two-level enhancement of a defendant’s offense level “[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim.” U.S.S.G. § 3A1.1. A “vulnerable victim” is a person who is “unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.” Id. § 3A1.1 cmt. n.2. To be an “unusually vulnerable” victim, a person must be less able to resist than the typical victim of the offense of conviction. United States v. Castaneda, 239 F.3d 978, 981 (9th Cir. 2001); United States v. Wetchie, 207 F.3d 632, 634 (9th Cir.2000). Because Nielsen was convicted of violating 18 U.S.C. § 2422(b), which criminalizes coercion and enticement of minors, there must be something more than AJ.’s age to justify applying the vulnerable victim enhancement in this case. Wetchie, 207 F.3d at 634.
There is. The district court found that A.J. was from a broken home, she was bored, she wanted to use illegal drugs, she had accessed an adult online sex site, and, despite being just twelve years old and in the seventh grade, she had been sexually active in the past. As if to underscore these vulnerabilities, A.J. stole money from her parents to purchase an interstate bus ticket and then traveled, alone, from Wyoming to Montana to meet a man who was twice her age and whom she knew was a registered sex offender. See United States v. Weischedel, 201 F.3d 1250, 1254 (9th Cir.2000) (explaining that the court must consider not only “the characteristics of the defendant’s chosen victim,” but also “the victim’s reaction to the criminal conduct! ] and the circumstances surrounding the criminal act”) (quotation marks and citation omitted).
While the district court called AJ.’s unusual vulnerability a “very difficult question,” it concluded that, “in weighing all of the proof I think it is more likely that she is an unusually vulnerable person or vie *1040 tim,” especially considering “the social aspect of this young person.” This conclusion is consistent with our case law. See United States v. Johnson, 132 F.3d 1279, 1285-86 (9th Cir.1997) (holding that a seventeen-year-old foreign student who had only been with his host parent for a few weeks before being sexually assaulted was a vulnerable victim, even though he was sexually experienced, called home several times, and knew people in the United States); United States v. Williams, 291 F.3d 1180, 1196 (9th Cir.2002) (per curiam) (“[T]he enhancement for victim vulnerability still is appropriate if the district court makes a finding of unique vulnerability in the circumstances.”), overruled on other grounds, United States v. Gonzales, 506 F.3d 940 (9th Cir.2007) (en banc); United States v. Mendoza, 262 F.3d 957, 960-61 (9th Cir.2001) (holding that fraud victims were unusually vulnerable based not on their identity as aliens, but on their specific, needs and background); United States v. Matsumaru, 244 F.3d 1092, 1107-08 (9th Cir.2001) (same).
Indeed, that A.J. was willing to steal money from her parents and travel to another state to meet an adult man she knew was a registered sex offender shows she did not appreciate the danger she was in. See United States v. Miguel, 368 F.3d 1150, 1157 (9th Cir.2004) (explaining that young children who willingly climbed into the back of a hot car trunk and did not ask for water did not “fully appreciate the danger” of the defendants’ smuggling operation, and therefore were “vulnerable victims” under § 3A1.1). The vulnerability A.J. demonstrated in these dangerous circumstances was particularly acute given that A.J., though not an infant or a toddler, “was not in a position of sufficient strength to resist,” United States v. Holt, 510 F.3d 1007, 1012 (9th Cir.2007), whatever the 6'4", 370-pound Nielsen may have demanded of her. Furthermore, once A.J. met Nielsen in his apartment, she became dependent on him for food, lodging, and possibly even money to return home. See United States v. O’Brien, 50 F.3d 751, 756-57 (9th Cir.1995) (holding that the vulnerable victim adjustment was proper where insurance fraud victims were reliant on health insurance provided by the defendants). Together these cases easily support the district court’s finding that A.J. was a vulnerable victim.
In reversing the district court, the majority cites cases holding that an unstable personal life and chemical dependency are not by themselves enough to find unusual vulnerability. Maj. Op. at 1036-37. But A.J. didn’t just come from a troubled home and want to smoke pot; she also was, .in the district court’s words, “unusually precocious.” The district court initially cited A.J.’s headstrong nature as a reason she might not be unusually vulnerable, but it became clear during the sentencing hearing that the opposite was true. As the government argues, A.J. was unusually willing to engage in sex with Nielsen, whom she knew was a registered sex offender. The majority responds that while A.J.’s “openness to enticement may distinguish A.J. from other minors, it does not provide a basis for determining that she was more susceptible than the typical victims of 18 U.S.C. § 2422, who by definition have been enticed to engage in sexual activity.” Maj. Op. at 1036. In erroneously equating will with susceptibility, the majority overlooks that a headstrong minor may actually be more susceptible to sexual coercion than her meeker peers.
That was plainly the case here. The district court’s characterization of A.J. as “unusually precocious” reflected the fact that she was unusually troubled, something Nielsen knew and took advantage of. See United States v. James, 139 F.3d 709, 714 (9th Cir.1998) (affirming a vulnerable victim adjustment where the victim’s pregnancy “created a potential vulnerability *1041 which [the defendant] acknowledged and exploited”). In other words, precociousness in a 12-year-old girl with A.J.’s background can be, and in this case was, a sign of unusual vulnerability, not maturity, responsibility, or intelligence. And even though minors who are enticed into sexual acts — that is, the group against whom A. J. must be compared — may be likely to share some of the characteristics that made A.J. “particularly susceptible to the criminal conduct,” U.S.S.G. § 3Al.l(b)(l), cmt. n.2, they almost certainly do not share most or all of them.[1]
Of course, we need not constrain our review to A.J.’s characteristics in determining whether the § 3A1.1 adjustment applied. Contrary to the majority’s conclusion, Maj. Op. at 1037, Nielsen’s conduct demonstrated a “new level of depravity” as compared to other offenders. United States v. Castellanos, 81 F.3d 108,112 (9th Cir.1996); see also United States v. Nichols, 464 F.3d 1117, 1122 (9th Cir.2006) (holding that we may affirm an enhancement on any ground supported by the record). The district court specifically found that “Mr. Nielsen has taken [adult males’ lascivious attraction to children] to a completely different level. Not only did he ... entice this young woman to come to Montana to engage in sex and drugs, he did so when she got here, having sexual intercourse with her five and six times daily for the period that she was in his apartment.” Nielsen’s moral depravity, combined with A.J.’s unique traits (of which Nielsen was aware and which no doubt informed Nielsen’s choice of victim), “create the extra need for societal protection which § 3A1.1 is designed to address.” United States v. Stover, 93 F.3d 1379, 1387 (8th Cir.1996).
Finally, even if this were a close case (it is not), we should defer to the district court. The majority does not disturb any of the district court’s factual findings, and accordingly we must respect them. United States v. Salcido, 506 F.3d 729, 732 (9th Cir.2007). I recognize that we have not resolved whether we review a district court’s application of the Guidelines to the facts de novo or for abuse of discretion. See United States v. Swank, 676 F.3d 919, 921-22 (9th Cir.2012). Nonetheless, in a case like this one, the district judge’s personal observations of the victim and the perpetrator are far more insightful than our review of a cold record, and we should resolve any doubts in the district court’s favor. Cf. Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (“The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.”) (quotation marks and citations omitted).[2]
*1042 The effect of the majority’s opinion is to make the § 3A1.1 “vulnerable victim” adjustment much more difficult to apply. As the majority correctly observes, our past cases hold or suggest that a minor’s age, drug addiction, or unstable personal life are not by themselves enough to apply the adjustment for offenses committed under 18 U.S.C. § 2422. Maj. Op. at 1036 & n.4. But now we hold that much greater evidence of vulnerability is not enough, either. If a twelve-year-old girl from a troubled home who lies about her age, logs on to a sex chat line, and is enticed by a self-confessed sex offender more than twice her age to steal money from her parents, cross state lines, do illegal drugs, and engage in repeated sadomasochistic sex for four days isn’t unusually vulnerable, I don’t know who is.[3]
II. Repeat and dangerous sex offender enhancement
Nielsen previously was adjudicated a juvenile delinquent in state court after he pleaded guilty to sexually assaulting his half sister. The district court relied on this adjudication to enhance Nielsen’s sentence under Sentencing Guideline § 4B1.5(a), which applies where “the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction.”
We know that Nielsen’s juvenile adjudication is a “sex offense conviction” under § 4B1.5(a) for a simple reason: § 4B1.5(a) “and its Application Notes contain no juvenile-conduct or conviction-limiting language, in contrast to other Guidelines within Chapter 4.” United States v. Phillips, 431 F.3d 86, 92 (2d Cir.2005).[4] Such limiting language is present in U.S.S.G. § 4A1.1, which applies an enhancement for “each prior sentence of imprisonment exceeding one year and one month,” except that “[a] sentence imposed for an offense committed prior to the defendant’s eighteenth birthday is counted under this subsection only if it resulted from an adult conviction.” U.S.S.G. § 4Al.l(a) & cmt. n.l. Similarly, an enhancement applies for “each prior sentence of imprisonment of at least sixty days not counted in (a),” id. § 4Al.l(b), but “[a]n adult or juvenile sentence imposed for an offense committed prior to the defendant’s eighteenth birthday is counted only if confinement resulting from such sentence extended into the five-year period preceding the defendant’s commencement of the instant offense,” id. § 4A1.1 cmt. n.2 (citing id. § 4A1.2(d)); see also id. § 4Al.l(e). Section 4B1.5(a) includes no such distinctions between juvenile and adult adjudications. See Phillips, 431 F.3d at 92-93.
*1043 Our cardinal canons of construction require that we give the Guidelines their plain meaning, United States v. Calderon Espinosa, 569 F.3d 1005, 1007 (9th Cir. 2009), and avoid inserting words they do not contain, see Sale v. Haitian Ctrs. Council, Inc., 509 U.S. 155, 168 n. 16, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993); see also Am. Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (“[AJbsent a clearly expressed legislative intention to the contrary, [the plain language of a statute] must ordinarily be regarded as conclusive.” (quotation marks and citation omitted)).
The majority chooses to ignore the plain language of § 4B1.5(a) and our canons for reading it, arguing instead that “[w]hen the Guidelines apply to juvenile adjudications, they say so expressly.” Maj. Op. at 1037 (citing U.S.S.G. § 4A1.2(d)); see also Maj. Op. at 1038 (making the same assertion with respect to statutes enacted by Congress). To win the stalemate, the majority cites the rule of lenity, but that rule applies “only where ‘after seizing every thing from which aid can be derived, the Court is left with an ambiguous statute.’ ” United States v. Nader, 542 F.3d 713, 721 (9th Cir.2008) (quoting Smith v. United States, 508 U.S. 223, 239, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)). Here, there is no ambiguity, as neither § 4B 1.5(a) nor its application notes state or imply that a juvenile adjudication does not qualify as “sex offense conviction.” We should not canvass the Sentencing Guidelines to support negative implications because the Guideline before us is plain on its own terms.
The majority’s remaining arguments hold little water. The majority relies on United States v. Doe, 53 F.3d 1081 (9th Cir.1995), for the general proposition that “juvenile adjudications do not result in ‘convictions.’ ” Maj. Op. at 1038. However, Doe dealt generally with the rehabilitative purposes of the Federal Juvenile Delinquency Act, not with whether a juvenile adjudication is a “conviction” for purposes of sentencing a defendant for a crime he committed as an adult. See Doe, 53 F.3d at 1083-84; see also Jonah R. v. Carmona, 446 F.3d 1000, 1007 (9th Cir.2006) (cautioning against a “too-literal reading of Title 18 as applied to juveniles” based on Doe).
The majority also cites the fact that, under Montana law, “criminal conviction[s]” do not include juvenile adjudications. Maj. Op. at 1038 (citing MontCode Ann. § 41-5-106). But whether state law defines a juvenile adjudication as a “conviction” is irrelevant to whether the federal Sentencing Guidelines do so. See United States v. Leal-Felix, 665 F.3d 1037, 1040 (9th Cir.2011) (“[W]e do not look to state law to determine the meaning of the Sentencing Guidelines. A federal sentencing enhancement provision ... is interpreted according to a uniform, national definition, not dependent upon the vagaries of state law.” (citation, internal quotation marks, and alterations omitted)); see also United States v. Mendoza-Morales, 347 F.3d 772, 776 (9th Cir.2003) (explaining that, “in deciding whether a prior state conviction should be counted for purposes of a federal criminal history calculation, a district court must examine federal law,” not state law).
At the end of the day, it does not matter whether the district court erred in enhancing Nielsen’s sentence under § 4B1.5(a) because any error was harmless. The parties agree, and the majority does not dispute, that Nielsen “engaged in a pattern of activity involving prohibited sexual conduct” under § 4B1.5(b). Because the district court properly applied the vulnerable victim adjustment, the § 4B1.5(b) enhancement places Nielsen in the same sentencing range (235-293 months) as if § 4B1.5(a) applied.
*1044 III. Substantive reasonableness
Because the majority vacates Nielsen’s sentence under U.S.S.G. §§ 3A1.1 and 4B1.5(a), it does not address Nielsen’s argument that his sentence is substantively unreasonable. Because I would find no error in the district court’s application of §§ 3A1.1 and 4B1.5(a), I address Nielsen’s argument.
We review the substantive reasonableness of a criminal sentence for abuse of discretion. United States v. Ressam, 679 F.3d 1069, 1086 (9th Cir.2012) (en banc). A district court abuses its discretion “ ‘when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment.’” Id. (quoting United States v. Hinkson, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc), cert. denied, — U.S. -, 131 S.Ct. 2096, 179 L.Ed.2d 890 (2011)). “We may not reverse just because we think a different sentence is appropriate.” United States v. Carty, 520 F.3d 984, 993 (9th Cir.) (en banc), cert. denied sub nom., 553 U.S. 1061, 128 S.Ct. 2491, 171 L.Ed.2d 780 (2008).
While 480 months is a long sentence, the district court appropriately explained why that sentence was reasonable based on the factors laid out in 18 U.S.C. § 3553(a). The court discussed Nielsen’s “history and characteristics,” 18 U.S.C. § 3553(a)(1), including Nielsen’s prior sex offenses, flat affect during the sentencing hearing, psychopathic traits, high risk of recidivism, and four-time failure to complete sex offender treatment. The court discussed the need for Nielsen’s sentence to promote respect for the law, referencing Nielsen’s failure to register as a sex offender and his difficulties with supervision. Finally, the court discussed the need to protect the public, referencing Nielsen’s young age, lack of honest remorse, and demonstrated poor potential for rehabilitation.
The district court, having decided that an above-Guidelines sentence was warranted, “ ‘considered] the extent of the deviation and ensure[d] that the justification [was] sufficiently compelling to support the degree of the variance.’ ” Carty, 520 F.3d at 991 (quoting Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Specifically, the court concluded that, given the facts of the crime and all of Nielsen’s characteristics, “a very, very significant upward variation from the Guidelines is appropriate and reasonable.” The court explained that it was “unconvinced that 20 years is sufficient” and that “children need to be protected from him. And the most significant way to deal with ... a person who is not likely to be subject to rehabilitation or treatment, is to incarcerate him for a long period of time.” In short, the district court’s explanation of its sentencing decision is sufficient to “permit meaningful appellate review,” Carty, 520 F.3d at 992, and betrays no “clear error of judgment,” Ressam, 679 F.3d at 1086 (quotation marks and citation omitted).
Nielsen nonetheless argues that his sentence is substantively unreasonable for three reasons. First, Nielsen contends that the factors the district court relied on to fashion his sentence were “repetitious”; that is, they already were accounted for in the Sentencing Guidelines provisions the district court used to calculate his sentencing range. But while there is some overlap, the Guidelines provisions do not account for factors that were critical to the district court’s decision, such as Nielsen’s use of drugs to entice A.J., the sadomasochistic aspects of Nielsen’s conduct, or the physical repercussions for A. J., all of which bear on the “nature and circumstances of the crime,” 18 U.S.C. § 3553(a)(1), and which meant, in the district court’s estima *1045 tion, that “a much higher sentence is appropriate.” Nielsen also argues that the district court drew “exaggerated” or “factually flawed” inferences from a psychological report, including the inference that Nielsen was not likely to learn from his experience. However, the report explicitly arrived at that conclusion based on Nielsen’s lack of self-control, impulsivity, callousness, and lack of guilt or remorse. Finally, Nielsen asserts that his sentence is unfair because the district court made no reference to A.J.’s conduct. That assertion is incorrect; the court considered A.J.’s behavior, including that she actively pursued drugs and was willing to engage in sexual conduct. The district court did not abuse its discretion by concluding that Nielsen’s encouragement of these behaviors weighed for, rather than against, a lengthy sentence.
IV. Conclusion
The record and the case law support the district court’s finding that A.J. was an unusually vulnerable victim warranting an adjustment to Nielsen’s sentence under Sentencing Guidelines § 3A1.1. In holding otherwise, the majority puts that adjustment out of reach in all but the rarest of cases. In addition, the district court did not err in enhancing Nielsen’s sentence under Sentencing Guidelines § 4B1.5(a) based on a prior juvenile sexual assault adjudication. Nothing in that section limits “sex offense conviction[s]” to adult, rather than juvenile, adjudications. In any event, any error in applying this enhancement was harmless, since Nielsen was eligible for an enhancement under § 4B1.5(b). Finally, Nielsen’s sentence is substantively reasonable. For these reasons, I would affirm the district court.

. The majority incorrectly asserts that I "do[] not identify any factors that meaningfully distinguish AJ. from R.K., the minor victim in Williams." Maj. Op. at 1036. In Williams, the district court concluded that R.K. came from an unstable home and used drugs. We held that these characteristics were not enough to distinguish R.K. from other victims of the Mann Act, to which the statute of conviction in Williams (as here) traced its origins. Williams, 291 F.3d at 1196.
Here, however, A.J. was not a sex worker who was used and abused by her pimp; she was a 12-year-old girl who, given her extraordinary past, habits, and personality, was capable of being (and was) coerced into extraordinary exploitation. In addition, whereas in Williams the district court did not make any findings regarding the defendant’s "potential exploitation of that vulnerability,” id., here the district court expressly found that Nielsen knew of A.J.’s vulnerabilities and took advantage of them.

. In Koon v. United States, 518 U.S. 81, 98, 116 S.Ct 2035, 135 L.Ed.2d 392 (1996), the Supreme Court explained:
Whether a given factor is present to a degree not adequately considered by the Com *1042 mission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do.
The same considerations apply when applying sentencing enhancements, including the vulnerable victim adjustment.

. The majority responds that the vulnerable victim adjustment remains available for 18 U.S.C. § 2422(b) violations “so long as the district court identifies a specific factor (or factors) that made the victim uniquely vulnerable as compared to the typical victim of the offense.” Maj. Op. at 1037. The point is that the district court did that here. The majority’s contrary conclusion serves to winnow the factors upon which a district court may base the adjustment, even though no authority compels that result and good reason counsels against it.

. Phillips actually addressed § 4B 1.5(b), but this observation is equally true of § 4331.5(a).